IN THE SUPREME COURT OF PENNSYLVANIA
WESTERN DISTRICT

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, JJ.**

| | | |
|---|---|---|
| D.P. AND B.P., HIS WIFE, | : | No. 25 WAP 2015 |
| | : | |
| Appellants | : | Appeal from the Order of the Court of |
| | : | Common Pleas of Westmoreland |
| v. | : | County dated September 8, 2015 at No. |
| | : | 1750 of 2014-D. |
| | : | |
| G.J.P. AND A.P., | : | |
| | : | |
| Appellees | : | ARGUED: April 5, 2016 |

## OPINION

**CHIEF JUSTICE SAYLOR**                    **DECIDED: SEPTEMBER 9, 2016**

This is a direct appeal from a common pleas court order invalidating a statutory provision giving grandparents standing to seek custody of their minor grandchildren. The question presented is whether the parents' fundamental rights are violated by the conferral of standing based solely on a parental separation lasting at least six months.

The material facts are uncontested. Appellees G.J.P. and A.P. ("Parents") married in 2006 and had three children, all of whom are still minors. Parents separated in October 2012, albeit they did not initiate divorce proceedings. Because they were in agreement as to custody matters while living separately, Parents never sought court involvement and no custody order was issued prior to this litigation. In December 2012, Parents mutually agreed that all contact between the children and their paternal grandparents, appellants D.P. and B.P. ("Grandparents"), should be discontinued.

In October 2014, Grandparents commenced this action by filing a complaint in the county court naming Parents as defendants and seeking partial physical custody of the minor children. *See* 23 Pa.C.S. §5322(a) (defining partial physical custody as physical custody for less than a majority of the time). Grandparents did not suggest that Parents were unfit or that the children were in any danger. As their basis for standing they relied on Section 5325 of the Domestic Relations Code (the "Code"),[1] which states:

> In addition to situations set forth in section 5324 (relating to standing for any form of physical custody or legal custody), grandparents and great-grandparents may file an action under this chapter for partial physical custody or supervised physical custody in the following situations:
>
> (1) where the parent of the child is deceased, a parent or grandparent of the deceased parent may file an action under this section;
>
> (2) *where the parents of the child have been separated for a period of at least six months* or have commenced and continued a proceeding to dissolve their marriage; or
>
> (3) when the child has, for a period of at least 12 consecutive months, resided with the grandparent or great-grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, an action must be filed within six months after the removal of the child from the home.

23 Pa.C.S. §5325 (emphasis added).[2]

---

[1] The Domestic Relations Code comprises Title 23 of the Pennsylvania Consolidated Statutes. Section 5325 is located in Chapter 53, which governs child custody disputes. *See* 23 Pa.C.S. §5321. The most recent version of the chapter was enacted in 2010. *See* Act of Nov. 23, 2010, P.L. 1106, No. 112, Section 2 (as amended 53 Pa.C.S. §§5321-5340). That legislation repealed and replaced the prior version, enacted in 1985, which had been codified at Sections 5301 through 5315.

[2] Section 5324, referred to in the initial portion of Section 5325 above, gives grandparents standing to seek custody in various situations not implicated here, such as where a child has been adjudicated dependent or is at substantial risk of harm from the parents. *See* 23 Pa.C.S. §5324(3).

In November 2014, the court issued an interim custody order granting shared legal custody to Parents and directing that Grandparents continue to have no contact with the children. Thereafter, Parents filed a motion to dismiss, alleging that the portion of paragraph (2) of Section 5325 emphasized above violates their Fourteenth Amendment rights to due process and equal protection. Grandparents submitted a responsive pleading observing it was undisputed that Parents had been separated for at least six months.

After briefing and oral argument, the court issued an order granting Parents' motion and dismissing the complaint. In an accompanying opinion, the court agreed with Parents that Section 5325(2) violates their constitutional rights. The court recognized, initially, that Parents have a fundamental liberty interest in raising their children as they see fit. *See D.P. v. G.J.P.*, No. 1750 of 2014-D, *slip op.* at 2 (C.P. Westmoreland Sept. 8, 2015) (quoting *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 2060 (2000) (plurality)). Accordingly, the court reasoned, because Section 5325(2) substantially burdens that interest, it can only be upheld if it survives strict scrutiny – meaning, it must be narrowly tailored to further a compelling government interest. *See id.* at 4.

Applying strict scrutiny, the court specified that the state has a compelling interest, exercised through its *parens patriae* powers, in protecting the welfare of children who are at risk of harm. In the court's view, however, Section 5325(2) does not embody a narrowly-tailored means of serving that interest because it improperly assumes, based solely on the parents' separated status, that their joint decisions regarding the raising of their children are infected by a degree of unfitness. *See id.* at 6 & n.3. By contrast, the court pointed to paragraphs (1) and (3) as reflecting more persuasive circumstances to allow for grandparent standing. *See id.* at 5.

In terms of precedent, the common pleas court recited that, in *Hiller v. Fausey*, 588 Pa. 342, 904 A.2d 875 (2006), and *Schmehl v. Wegelin*, 592 Pa. 581, 927 A.2d 183 (2007), this Court sustained the application of grandparent-standing provisions contained in the prior version of Chapter 53. *Hiller* approved standing in favor of a grandparent whose child was deceased, *see Hiller*, 588 Pa. at 365-66, 904 A.2d at 890 (upholding 23 Pa.C.S. §5311 (repealed)), while *Schmehl* endorsed standing where the parents were divorced and also disagreed concerning the grandparents' partial-custody request. *See Schmehl*, 592 Pa. at 594, 927 A.2d at 190 (sustaining an application of 23 Pa.C.S. §5312 (repealed)). The court distinguished those situations, noting that, here, Parents had jointly decided that their children should have no contact with Grandparents – and suggesting more generally that when any two parents who are merely separated are in agreement concerning the individuals with whom their children should or should not associate, there is no adequate basis to disturb the ordinary presumption, credited by the United States Supreme Court, that fit parents act in their children's best interests. *See D.P.*, No. 1750 of 2014-D, *slip op.* at 9 (quoting *Troxel*, 530 U.S. at 68, 120 S. Ct. at 2061).

As to this latter point, the court referred to *Herron v. Seizak*, 321 Pa. Super. 466, 468 A.2d 803 (1983), and *Helsel v. Puricelli*, 927 A.2d 252 (Pa. Super. 2007), both of which involved married parents who agreed that grandparents should not be given visitation or custody. *See D.P.*, No. 1750 of 2014-D, *slip op.* at 9-10. Although *Herron* and *Helsel* dealt with intact families, the county court interpreted the opinions as primarily establishing that courts should not upset a unified decision of the child's parents at the behest of a third party. *See id.* at 10. Circling back to the equal protection facet of Parents' argument, the court ultimately held that, inasmuch as the law presumes married parents living together are able to co-parent their children without

judicial interference, there was no constitutionally sound basis to support a classification whereby married parents who are separated should be treated differently. *See id.* at 10-11. In this regard, the court indicated that the statute reflects an inappropriate "implicit presumption of unfitness" attaching to separated parents solely on account of their separated status. *Id.* at 11.

On direct appeal to this Court,[3] Grandparents acknowledge that Parents have a fundamental right to direct the care, custody, and control of their children, thus triggering strict scrutiny under the Due Process Clause. They agree with the common pleas court that the state interest presently implicated, protecting children's health and emotional wellbeing, is a compelling one. Grandparents contend, however, that the statute is narrowly drawn to advance that interest because it favors relationships specifically with grandparents, and only when the parents have been separated for six months. Grandparents maintain that this materially distinguishes the statute from the one deemed constitutionally problematic in *Troxel* – which allowed standing in favor of any person at any time, *see* WASH. REV. CODE §26.10.160(3) – particularly in view of the elevated importance extended-family ties have assumed in recent years due to the breakdown of the nuclear family.

Grandparents observe that *Hiller* pointed to this aspect of the former Section 2311 as being salient in light of the 1985 enactment's underlying legislative policy to promote "continuing contact with . . . grandparents when a parent is deceased, divorced

---

[3] Grandparents initially appealed to the Superior Court, where the matter was docketed at No. 1577 WDA 2015. The intermediate court transferred the appeal to this Court, which has exclusive appellate jurisdiction of common pleas court decisions holding that a statute is unconstitutional. *See* 42 Pa.C.S. §722(7); *see also* Pa.R.A.P. 751 (relating to the transfer of erroneously-filed cases). While the matter was pending in the Superior Court, Parents notified the Attorney General that a statute's constitutionality had been drawn into question. *See* Pa.R.A.P. 521(a) (requiring such notice). However, the Attorney General has elected not to participate.

or separated." *See* Brief for Appellants at 11 (citing *Hiller*, 588 Pa. at 360, 904 A.2d at 886, and quoting 23 Pa.C.S. §5301 (repealed)).[4]  Grandparents indicate, moreover, that *Hiller* approved the statutory scheme involved in that dispute because it required that, before grandparent visitation could be ordered, the court take into account whether such visitation would interfere with the parent-child relationship, whether a strong bond between the child and grandparent previously existed, and the child's best interests generally.  *See id.* at 12 (citing *Hiller*, 588 Pa. at 361, 904 A.2d at 887).  Although Grandparents do not say so expressly, it is implicit in their argument that they believe the same analysis and outcome should obtain under the Due Process Clause in relation to Section 5325.

As for equal protection, Grandparents rely largely on *Schmehl*, which rejected an equal protection challenge to grandparent standing under Section 5312.[5]  They maintain that, because that section contained language which is similar to Section 5325(2), this Court should apply the same constitutional principles here as it did in *Schmehl*.  In terms of the validity of the classification at issue – parents who co-parent while living

---

[4] Section 5301 was repealed by the 2010 enactment, *see supra* note 1, and there is no expression of legislative policy in the present version of Chapter 53.

[5] Section 5312 stated:

> In all proceedings for dissolution, subsequent to the commencement of the proceeding and continuing thereafter or when parents have been separated for six months or more, the court may, upon application of the parent or grandparent of a party, grant reasonable partial custody or visitation rights, or both, to the unmarried child if it finds that visitation rights or partial custody, or both, would be in the best interest of the child and would not interfere with the parent-child relationship. The court shall consider the amount of personal contact between the parents or grandparents of the party and the child prior to the application.

23 Pa.C.S. §5312 (repealed).

separately, versus parents who co-parent and live together – Grandparents point out, initially, that *Schmehl* expounded upon the analytical overlap between due-process and equal-protection principles in a context involving the protection of children's health and emotional welfare, and they again refer to the breakdown of the nuclear family as an important factor justifying the General Assembly's decision to allow grandparents to petition for custody when parents have separated.  *See* Brief for Appellants at 13-15.

Parents' argument largely tracks the common pleas court's analysis with regard to both the due process and equal protection inquiries.  Briefly, they note it is established law that, because their parental rights are fundamental, the Due Process Clause accords those rights heightened protection.[6]  Parents counter Grandparents' position that the statute is narrowly tailored, arguing:  (a) there is no factual basis to presume based solely on a couple's separation that their children are at greater risk of harm; and (b) when presumptively fit parents agree that their children should not develop relationships with specific third parties, simply pointing to the "blood relationship" of those third parties is insufficient to justify an invocation of the state's *parens patriae* interest.  Brief for Appellees at 28.

Addressing the topic of potential harm to the children, Parents offer that, in pre-*Hiller* cases where the state exercised its *parens patriae* authority, the fitness of the parent was in question due to abuse, neglect, delinquency, or a failure to perform parental duties.  *See id.* at 29 (citing *Ellerbe v. Hooks*, 490 Pa. 363, 416 A.2d 512

---

[6] Parents indicate there is a good reason to consider such rights fundamental, not only because of the traditional right of parents to "establish a home and bring up children," Brief for Appellees at 15 (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S. Ct. 625, 626 (1923)), but because parents fulfill a role which the government cannot.  *See id.* at 16 (citing *Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S. Ct. 438, 442 (1944) ("It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.")).

(1980) (affirming an award of custody to the maternal grandmother over the father's objections where the child was eleven years old and had lived exclusively with the grandmother for more than nine years), *In re Adoption of J.J.*, 511 Pa. 590, 515 A.2d 883 (1986) (approving the involuntary termination of parental rights where the father demonstrated a fixed inability to perform parental duties), and *In re Adoption of C.A.E.*, 516 Pa. 419, 532 A.2d 802 (1987) (same where a prematurely-born infant needed ongoing parent-assisted medical intervention, but the mother was unable to provide such care and she had previously deprived the infant of care)). Differentiating the present situation, they argue that separation does not equate to abuse, neglect, or an inability to perform parental duties. As for *Hiller* itself, Parents read the holding as resting on an understanding that the death of a parent would naturally tend to harm a child's wellbeing, and that such harm would be magnified if the child also lost contact with a grandparent with whom he or she had a pre-existing beneficial relationship. *See id.* at 30 (quoting *Hiller*, 588 Pa. at 366 n.24, 904 A.2d at 890 n.24).

Insofar as equal protection is concerned, Parents recognize that *Schmehl* is the decision most closely related to the present scenario and that the Court upheld the classification drawn by former Section 5312. Parents do not argue that *Schmehl* was wrongly decided or that it should be overruled. They do contend, however, that the case is distinguishable because: it did not involve a joint decision by both parents, but rather, a situation in which a divorced father supported his parents' request for visitation; and the parents were already subject to a custody order. By contrast, Parents indicate they were never subject to a custody order before Grandparents filed their complaint, nor do they disagree on matters of custody or visitation. Further, they assert that no reason has been alleged why they are less capable than non-separated parents of making appropriate decisions about their children's welfare.

Parents suggest, as well, that many couples who live together lead dysfunctional homes and make poor parenting decisions, all of which evidences the arbitrariness of Section 5325's implicit assumption that separated parents are less fit as parents than those who live under the same roof. Consequently, Parents propose that the legislative classification which rests on that assumption does little to advance the state's interest in protecting children or promoting their welfare. *See id.* at 35-36. Finally, Parents draw support for their position from a responsive expression in *Schmehl* in which former Chief Justice Cappy opined that separation and divorce are not valid proxies for ascertaining which parents might cause harm to their children. *See id.* at 36-37 (citing *Schmehl*, 592 Pa. at 596-97, 927 A.2d at 192 (Cappy, C.J., dissenting)).

As reflected in our cases and in *Troxel*, Grandparent visitation and custody statutes authorize state action and, as such, they are subject to constitutional limitations. *Accord, e.g.*, *In re Herbst*, 971 P.2d 395, 398-99 (Okla. 1998) (explaining that, "mandating the introduction of a third party, even a grandparent, into a family unit is state action limiting the parents' liberty").[7] There is no dispute that Section 5325 burdens the right of parents to make decisions concerning the care, custody, and control of their children; that such right is a fundamental one, *see Troxel*, 530 U.S. at 65-66, 120 S. Ct. at 2060-61 (discussing cases); *Hiller*, 588 Pa. at 358, 904 A.2d at 885;

---

[7] Visitation and custody are distinct concepts. *See Hiller*, 588 Pa. at 346 n.4, 904 A.2d at 878 n.4. Visitation pertains to the right to visit a child but does not include the ability to remove the child from the custodial parent's control. *See* 23 Pa.C.S. §5302 (repealed). Physical custody refers to the "physical possession and control of a child." 23 Pa.C.S. §5322(a). As noted, partial physical custody is defined as physical custody for less than a majority of the time. *See id.* Chapter 53 as enacted in 1985 regulated visitation and custody, whereas the 2010 version only governs custody. In our present discussion, we mention custody and visitation because some of the authority from other jurisdictions relates to visitation and the constitutional analysis, for present purposes, is materially identical.

and that, as such, it is protected by the Fourteenth Amendment's due-process and equal-protection guarantees. *See* U.S. CONST. amend. XIV, §1 (forbidding states from depriving "any person of life, liberty, or property, without due process of law," or from denying to any person within their jurisdiction "the equal protection of the laws"). In light of these factors there is also no disagreement that, to survive a due process or equal protection challenge, Section 5325 must satisfy the constitutional standard known as strict scrutiny.

The basic features of strict scrutiny, relating to whether the governmental action is narrowly tailored to a compelling state interest, *see Hiller*, 588 Pa. at 359, 904 A.2d at 885-86, are well established. As expressed in *Schmehl*, the inquiries per the Due Process and Equal Protection Clauses are distinct but overlapping: pursuant to the former, the government's infringement on fundamental rights must be necessary to advance a compelling state interest, whereas under the latter it is the classification inherent in the statute which must be necessary to achieve that interest. *See Schmehl*, 592 Pa. at 589, 927 A.2d at 187.[8]

Broadly speaking, the state, acting pursuant to its *parens patriae* power, has a compelling interest in safeguarding children from various kinds of physical and emotional harm and promoting their wellbeing.[9] *See Hiller*, 588 Pa. at 359, 904 A.2d at

---

[8] Strict scrutiny is separately triggered under the Equal Protection Clause if the legislation employs a suspect classification. *See Johnson v. California*, 543 U.S. 499, 508, 125 S. Ct. 1141, 1148 (2005). *See generally Small v. Horn*, 554 Pa. 600, 615 n.14, 722 A.2d 664, 672 n.14 (1998) (noting that suspect classifications include race, national origin, and, for purposes of state law, alienage). That aspect of equal protection jurisprudence is not presently implicated.

[9] "*Parens patriae*, literally 'parent of the country,' refers . . . to the role of the state as sovereign and guardian of persons under a legal disability to act for themselves such as juveniles, the insane, or the unknown." *West Virginia v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1089 (2d Cir. 1971).

886 ("The compelling state interest at issue in this case is the state's longstanding interest in protecting the health and emotional welfare of children."). That aim has been invoked to accomplish certain objectives where appropriate, such as involuntarily terminating a parent's rights and providing a child with a permanent home. *See In re Adoption of J.J.*, 511 Pa. at 608, 515 A.2d at 893; *see also* 23 Pa.C.S. §2511(a)(2), (9) (permitting involuntary termination of parental rights due to abuse, neglect, or the conviction of certain crimes).[10] The component of the government's *parens patriae* responsibility implicated here is its interest in ensuring that children are not deprived of beneficial relationships with their grandparents.[11]

Although this Court's most relevant precedent consists of *Hiller* and *Schmehl*, neither decision is directly on point. *Hiller* arose in a situation where the mother had died and the maternal grandmother sought to continue an existing relationship with the minor child. This Court upheld the common pleas court's application of the statute, 23 Pa.C.S. §5311 (repealed), observing that the provision was materially limited in scope to the deceased-parent scenario and only provided for custody in favor of a grandparent on the deceased parent's side, *see Hiller*, 588 Pa. at 360, 904 A.2d at 886, where the risk appears greatest that a pre-existing grandparent relationship may be severed.

---

[10] Aside from issues relating to family relationships, the government's interest in protecting children and promoting their welfare may also be served via its police power as reflected in enactments regulating child labor, requiring school attendance, vaccines, and motor-vehicle child safety seats, and imposing criminal liability for corrupting or otherwise harming minors. *Accord Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S. Ct. 438, 442 (1944); *Blixt v. Blixt*, 774 N.E.2d 1052, 1059 (Ma. 2002); *In re Custody of Smith*, 969 P.2d 21, 28 (Wash. 1998). *See generally* 18 Pa.C.S. Ch. 63 (defining offenses against or involving minors); *id.* §4304 (defining the offense of endangering the welfare of children).

[11] The statute also encompasses great-grandparents. For convenience we refer only to grandparents. *See Hiller*, 588 Pa. at 360 n.19, 904 A.2d at 886 n.19.

Grandparent custody in that context and the considerations it entails are distinct from, albeit perhaps overlapping with, the issues that arise when both parents are living.

Schmehl is closer to the present matter in that it concerned Section 5312, whose reach was defined by language similar to that which appears in paragraph (2) of Section 5325. *Compare* 23 Pa.C.S. §5312 (repealed) (allowing for grandparent partial custody or visitation during "proceedings for dissolution . . . or when parents have been separated for six months or more"), *with* 23 Pa.C.S. §5325(2) (giving grandparents standing "where the parents of the child have been separated for a period of at least six months or have commenced and continued a proceeding to dissolve their marriage"). Still, *Schmehl* involved divorced parents, *see generally Schmehl*, 592 Pa. at 593 n.9, 927 A.2d at 189 n.9 (citing scholarship concerning the effects of divorce on children); *see also id.* at 591, 927 A.2d at 188-89 (discussing prior judicial expressions regarding the impact of divorce on families), who were not in agreement concerning grandparent custody. *See id.* at 584, 927 A.2d at 184. The breakdown in unified parental decision-making was thus more severe in *Schmehl* than it is in the present matter, where Parents have never sought court involvement in their family issues and are able to co-parent in agreement concerning whether their children should maintain contact with their grandparents. The objecting parent in *Schmehl* only sought a declaration that the statute was invalid in the divorce setting, and the grandparents defended the statutory classification by emphasizing that, unlike with intact families, "[t]he state must oversee a divorce action, and arrange for custody, support and visitation in some cases." Brief for Appellants in *Schmehl v. Wegelin*, 592 Pa. 581, 927 A.2d 183 (2007) (No. 87 MAP 2005), 2005 WL 5713971, at *23. Hence, the separation scenario was not before the Court in *Schmehl*, and we cannot assume that any empirical studies relating to the effects of divorce carry over to mere separation.

In spite of these differences, *Hiller* and *Schmehl* do inform our inquiry. *Hiller* noted that common pleas courts are required to apply a presumption that parents act in their children's best interests, and that such presumption applies regardless of whether the statute facially necessitates it. *See Hiller*, 588 Pa. at 361, 904 A.2d at 887 ("In addition to the language of the statute, our precedent requires our courts to . . . provide a presumption in favor of the decision of a fit parent."). Thus, the Court observed that, whenever a custody dispute arises between the parents and a third party, "the evidentiary scale is tipped, and tipped hard, to the parents' side." *Hiller*, 588 Pa. at 362, 904 A.2d at 887 (quoting *Ellerbe*, 490 Pa. at 367, 416 A.2d at 514); *see also id.* at 363, 904 A.2d at 888 (developing that this Court has repeatedly "reaffirmed the presumption in favor of parents set forth in *Ellerbe*"); *accord Charles v. Stehlik*, 560 Pa. 334, 340, 744 A.2d 1255, 1258 (2000). *Hiller* also held that this presumption, combined with the "stringent requirements of Section 5311, as applied in this case," *Hiller*, 588 Pa. at 365, 904 A.2d at 890,[12] adequately protected parental rights so that grandparents did not need to make a threshold showing of actual or potential harm to the child stemming from the surviving parent's decisions. *See id.* at 365-66, 904 A.2d at 890.

By referring to the established presumption in favor of fit parents and Section 5311's requirements, *Hiller* rested its holding, in significant part, on considerations relating to the preliminary question of standing.[13] Most notably, the "stringent

---

[12] Section 5311 was similar to Section 5312, *see supra* note 5, although it referred to a situation where the parent was deceased. *See id.* at 344 n.1, 904 A.2d at 876 n.1.

[13] Grandparent standing to seek an order directing custody or visitation is a creature of statute, as grandparents generally lacked substantive rights at common law in relation to their grandchildren. *Accord Hiller*, 588 Pa. at 372, 904 A.2d at 894 (Newman, J., concurring); *Olds v. Olds*, 356 N.W.2d 571, 572 (Iowa 1984) (quoting *Mimkon v. Ford*, 332 A.2d 199, 200-01 (N.J. 1975)); 2 JOAN M. KRAUSKOPF ET AL., ELDERLAW: ADVOCACY FOR THE AGING §25:14 (2d ed. 1993 & Supp. 2015) (collecting cases).

requirements" of Section 5311 included a prerequisite that the petitioning grandparents demonstrate standing to seek relief. That *Hiller*'s constitutional analysis centered on the propriety of grandparent standing in the context which arose in that dispute is made explicit in its explanation that, "[u]nlike the statute in *Troxel*, which extended standing to any person at any time, Section 5311 narrowly limits those who can seek visitation or partial custody . . . to grandparents whose child has died." *Hiller*, 588 Pa. at 360, 904 A.2d at 886; *see also Schmehl*, 592 Pa. at 588, 927 A.2d at 187 (characterizing *Hiller* as holding that Section 5311 was "narrowly tailored . . . because it extend[ed] standing" to a limited, defined subset of grandparents).

*Schmehl*'s understanding of the aspect of Section 5312 at issue in that matter was similarly couched. *See id.* at 584-85, 927 A.2d at 184 (summarizing the mother's argument that equal protection norms were offended by Section 5312 because "standing to obtain partial custody or visitation is not afforded to grandparents of children whose parents are married and living together," while it is afforded to the grandparents of children whose parents are divorced or separated).

The focus on standing is sharpened even further in the present controversy: the common pleas court, unlike in *Hiller* and *Schmehl*, never reached the complaint's merits because it determined that the statutory basis for standing was unconstitutional. In this respect, it is notable that the redrafted Chapter 53, more expressly than its predecessor, segregates grandparent standing requirements (Section 5325) from merits considerations (Section 5328).[14] Therefore, as illustrated presently, whenever there are contested issues relating to standing, the chapter gives parents the ability to bifurcate

---

[14] The 1985 version of Chapter 23 also had sections nominally devoted to standing and merits, *see* 23 Pa.C.S. §§5313 (repealed), 5303 (repealed), but the merits section was very brief and such considerations were intermixed in Sections 5311 and 5312.

the proceedings by seeking dismissal for lack of standing, thereby requiring that any such preliminary questions be resolved before the complaint's merits are reached.

The potential for such bifurcation serves an important screening function in terms of protecting parental rights. As suggested, it facilitates early dismissal of complaints, thereby relieving families of the burden of litigating their merits where a sufficient basis for standing is absent. *Accord Rideout v. Riendeau*, 761 A.2d 291, 302-03 (Me. 2000) (plurality) (indicating that, in a bifurcated procedure, grandparent-standing requirements "provide[] protection against the expense, stress, and pain of litigation, unless and until the grandparents have convinced the court that they are among those grandparents who may pursue visits"). Indeed, a majority of Justices in *Troxel* recognized that such litigation can itself impinge upon parental rights, especially if it becomes protracted through the appellate process. *See Troxel*, 530 U.S. at 75, 120 S. Ct. at 2065; *id.* at 101, 120 S. Ct. at 2079 (Kennedy, J., dissenting); *accord Blixt v. Blixt*, 774 N.E.2d 1052, 1065-66 (Ma. 2002).[15] Therefore, and as the factors governing resolution of a custody

---

[15] *Hiller* also took notice of the costs associated with custodial litigation, indicating that grandchildren are not benefitted when "grandparents force their way into [their] lives through the courts, contrary to the decision of a fit parent," and adding that such consideration was "especially resonant given the strain that custody litigation places on the children as well as parents and grandparents[.]" *Hiller*, 588 Pa. at 359 & n.20, 904 A.2d at 886 & n.20 (citing *Troxel*, 530 U.S. at 101, 120 S. Ct. at 2079 (Kennedy, J., dissenting) (describing that custody litigation tends to be disruptive of family life and that, for a parent struggling financially, the monetary costs can undermine the parent's plans for the child's future)). Other courts have made similar observations. *See, e.g.*, *Conlogue v. Conlogue*, 890 A.2d 691, 699 (Me. 2006) (proffering that the strains of litigation "include various forms of pressures and stress that can pose a real threat to family well-being" (internal quotation marks and citations omitted)); *Hawk v. Hawk*, 855 S.W.2d 573, 577 n.2 (Tenn. 1993) (noting that such stresses include those which arise from the public disclosure of the details of private, inter-generational disputes); *cf. id.* at 576 n.1 (suggesting that court-ordered grandparent visitation in a family where there is animosity between the parents and grandparents can intensify the animosity and, as such, can be contrary to the child's best interests).

complaint's merits (as set forth in Section 5328) are not at issue, our analysis is directed to whether Section 5325's conferral of standing to grandparents to prosecute such a complaint can withstand strict scrutiny.

Again, absent factors such as abuse, neglect, or abandonment, the law presumes parents are fit and, as such, that their parenting decisions are made in their children's best interests. *See Parham v. J.R.*, 442 U.S. 584, 602-03, 99 S. Ct. 2493, 2504 (1979); *Troxel*, 530 U.S. at 68, 120 S. Ct. at 2061.[16] In the context of grandparent-initiated litigation, then, the rewritten Chapter 53 can only subsume the essential screening function referenced above if the prerequisites to grandparent standing effectively filter out cases where there is little reason to believe the government may constitutionally exercise its *parens patriae* power by ordering partial custody over the parents' objections.

Consequently, the question becomes whether the state may exercise its interest in fostering grandparent-grandchild relationships over the objection of presumptively fit parents solely on the basis that they have been separated for at least six months.

The stated goal is not insignificant. In the event of a major disruption to the family environment, such as where there is parental abuse, neglect, substance abuse, mental illness, or abandonment, the interest may be especially pronounced. *See Bennett v. Jeffreys*, 356 N.E.2d 277, 281 (N.Y. 1976) ("Examples of cause of necessity permitting . . . intrusion on parental control would be fault or omission by the parent seriously affecting the welfare of a child, the preservation of the child's freedom from serious physical harm, illness or death, or the child's right to an education, and the like[.]"). Even in less severe circumstances, and in view of the changing nature of the family in the modern era, *Hiller* suggests other important grounds for believing the state

---

[16] The record before us lacks any suggestion tending to rebut the presumption.

has an elevated interest. *See Hiller*, 588 Pa. at 360, 904 A.2d at 886 ("[I]n the recent past, grandparents have assumed increased roles in their grandchildren's lives and our cumulative experience demonstrates the many potential benefits of strong inter-generational ties." (citing *Troxel*, 530 U.S. at 64, 120 S. Ct. at 2059)); *see also id.* at 347, 904 A.2d at 878-79 (describing the benefits to a minor child, as found by the common pleas court, of continuing a relationship with his maternal grandmother to help him cope with his mother's death); *Michael v. Hertzler*, 900 P.2d 1144, 1150-51 (Wyo. 1995) (reviewing several ways in which grandparents influence their families (quoting Patricia S. Fernandez, *Grandparent Access: A Model Statute*, 6 Yale L. & Pol'y Rev. 109, 109-10 (1988))). Nevertheless, where there is no reason to believe presumptively fit parents are not acting in their children's best interests, the government's interest in allowing a third party to supplant their decisions is diminished. *See generally Conlogue*, 890 A.2d at 694 (expressing, as a general precept, that "something more than the best interest of the child must be at stake in order to establish a compelling state interest"); *Troxel*, 530 U.S. at 72-73, 120 S. Ct. at 2064 (explaining that, under the Due Process Clause, third-party standing to pursue custody cannot be based solely on the possibility that a judge may ultimately disagree with a parent as to what is in the child's best interests).

Additionally, and crucially for present purposes, we cannot assume that the rationale supporting the holdings in those cases applies equally to situations involving parental separation. As this case shows, when parents separate they do not always initiate divorce proceedings or otherwise request court involvement in their family affairs. *See generally* Brief for Appellees at 35-36 ("Parents are merely separated and not subject to a custody order. . . . Parents have the ability to reconcile."). Although separation may involve a disruption of the nuclear family unit, the children are often

shielded from having to participate in court proceedings and are, likewise, free from having to assimilate the knowledge that the government is now involved in their family life. *Cf. Frame v. Nehls*, 550 N.W.2d 739, 742 (Mich. 1996) (describing the challenged Michigan statute as setting forth a general rule that grandparents only have standing to seek visitation if a child custody dispute is already pending). Further, Grandparents and the Attorney General – who, as noted, has decided not to participate in this litigation, *see supra* note 3 – have not put before this Court any empirical data corresponding to that referenced in *Schmehl* tending to suggest that separation has the same adverse effects upon children as divorce.

As well, unlike in *Hiller*, separation necessarily implies that both parents are still alive, which in turn has several consequences. First, there is no void stemming from the death of a parent. Second, parental death cannot be the cause of the severance or non-existence of a grandparent-grandchild relationship. Finally, when both parents are living there is a possibility – as illustrated by this case – that the parents will be in agreement that their children should not maintain contact with particular third parties.[17] These factors render any court-mandated association with such third parties more intrusive to the parents' constitutional prerogatives than in a context where the parents have already invoked the court's oversight as to matters of custody and/or marital dissolution. *See generally Hawk v. Hawk*, 855 S.W.2d 573, 577 (Tenn. 1993) ("Although courts are commonly called on to resolve custody disputes between parents and to determine custody when parents are unfit, the trial court's interference with the

---

[17] We recognize that parental agreement of this nature is possible with divorced parents and parents who have commenced marriage dissolution proceedings. Whether the standing provisions of Chapter 53 as revised are constitutional in such situations should be developed going forward as cases involving those circumstances arise.

united decision of admittedly good parents represents a virtually unprecedented intrusion into a protected sphere of family life.").

In light of the foregoing, we conclude that the fact of a parental separation for six months or more does not render the state's *parens patriae* interest sufficiently pressing to justify potentially disturbing the decision of presumptively fit parents concerning the individuals with whom their minor children should associate. It follows that the infringement upon parental rights worked by Section 5325 is not narrowly tailored to a compelling governmental interest, as the provision could have been drafted to exclude separation as an independent basis for grandparent standing. *See Danson v. Casey*, 484 Pa. 415, 434, 399 A.2d 360, 370 (1979) (explaining that the narrow tailoring requirement means the statutory scheme must have been "structured with precision" and that the Legislature must have chosen the "le[ast] drastic means" of effectuating its objectives (internal quotation marks and citation omitted)); Richard H. Fallon, Jr., *Strict Judicial Scrutiny*, 54 UCLA L. REV. 1267, 1328 (2007) (observing that a legislative enactment can fail the narrow-tailoring component of strict scrutiny if it is "overinclusive"). Consequently, Section 5325 cannot survive strict scrutiny and, as such, it violates the fundamental rights of parents safeguarded by the Due Process Clause.[18]

Although we have concluded that Section 5325 is not narrowly tailored, it is evident from our discussion that this determination rests solely on the conferral of standing under paragraph (2), the only aspect of Section 5325 that has been brought into question in this action. Moreover, paragraph (2) is itself divided into two parts and phrased in the disjunctive, as it provides for grandparent standing "where the parents of the child have been separated for a period of at least six months *or* have commenced

---

[18] In view of our disposition, we need not reach the Equal Protection claim.

and continued a proceeding to dissolve their marriage[.]" 23 Pa.C.S. §5325(2) (emphasis added). It is noteworthy that these are separate and independent preconditions for grandparent standing, since it is possible for parents who have not been separated for at least six months to commence and continue a dissolution proceeding. Thus, the difficulties apparent in the first half of paragraph (2) do not imply that the second half – or, for that matter, paragraph (1) or paragraph (3) – is also problematic.

The above informs our decision concerning the appropriate remedy, and in particular, the question of severance. In *Ayotte v. Planned Parenthood of Northern New England*, 546 U.S. 320, 126 S. Ct. 961 (2006), the Supreme Court explained that "when confronting a constitutional flaw in a statute, we try to limit the solution to the problem." *Id.* at 328, 126 S. Ct. at 967. The Court continued that "a statute may be declared invalid to the extent that it reaches too far, but otherwise left intact." *Id.* at 329, 126 S. Ct. at 968 (ellipsis, internal quotation marks, and citation omitted). In salvaging a statute to the extent possible without judicially rewriting it, *Ayotte* observed that the "touchstone" for the remedy is legislative intent, that is, asking whether the "legislature [would] have preferred what is left of its statute to no statute at all[.]" *Id.* at 330, 126 S. Ct. at 968 (citing, *inter alia*, *United States v. Booker*, 543 U.S. 220, 227, 125 S. Ct. 738, 746 (2005)).

This comports with our own practice. Although there is no express severability provision contained in Act 112 of 2010 or any aspect of the Domestic Relations Code applicable to Chapter 53, the Statutory Construction Act directs, as general policy, that all statutory provisions are presumed to be severable, and that if any provision is held to be invalid the remainder of the statute which contains it

> shall not be affected thereby, unless the court finds that the valid
> provisions of the statute are so essentially and inseparably connected

with, and so depend upon, the void provision or application, that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

1 Pa.C.S. §1925. Thus, severance is appropriate where the remaining provisions are capable of execution in accordance with legislative intent. *See, e.g.*, *Commonwealth v. Mockaitis*, 575 Pa. 5, 29-30, 834 A.2d 488, 502-03 (2003).

As noted, paragraphs (1) and (3) of Section 5325, as well as the second half of paragraph (2), set out separate and distinct bases for grandparent standing that do not depend on the first half of paragraph (2), that is, on the parents having been separated for at least six months. Since these are not "essentially and inseparably connected with" the separation provision, they are capable of execution and may continue in force absent the first half of paragraph (2). Such provisions, moreover, are neither implicated by the underlying facts nor challenged by the parties.

As concerns the second half of paragraph (2) in particular, invalidating it per the suggestion forwarded by Justices Baer and Wecht would require reaching beyond the bounds of this dispute and declaring Section 5325 unconstitutional more broadly than is necessary to resolve the appeal. It would be premature – and thus improper – to make a wide-reaching constitutional declaration along these lines in the present context in which no challenge to the standing requirements relative to divorced parents has been raised or briefed. We thus differ with any suggestion that we are somehow "avoiding" this issue. Concurring and Dissenting Opinion, *slip op.* at 4 n.2 (Baer, J.).

More generally, it should be recalled that our "adjudicatory process is structured to cast a narrow focus on matters framed by litigants before the Court in a highly directed fashion," *Sernovitz v. Dershaw*, ___ Pa. ___, ___ n.13, 127 A.3d 783, 794 n.13 (2015) (internal quotation marks and citation omitted), and, as such, we sit "to decide

concrete cases." *Id.* (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 386, 101 S. Ct. 677, 681 (1981)). As a result, and as already suggested, *see supra* note 17, any such judgment should be left for a future controversy in which the issue is squarely presented, the Court has the benefit of focused adversarial briefing, and the Attorney General is apprised that the constitutional validity of the second half of Section 5325(2) has been called into question and is given an opportunity to defend it. *See City of Phila. v. Commonwealth*, 575 Pa. 542, 570, 838 A.2d 566, 583 (2003) (explaining that the Attorney General is charged with defending the constitutionality of all statutes passed by the General Assembly (citing 71 P.S. §732-204(a)(3))). Finally, although Justice Wecht may disagree with the holding reached in *Schmehl*, it remains binding precedent and the parties' briefs lack any request that it be overruled.

Accordingly, we now sever the first half of paragraph (2) from the remainder of paragraph (2) and the remainder of Section 5325 generally.[19]

The order of the Court of Common Pleas dismissing Grandparents' complaint is affirmed.

Justices Todd, Donohue and Dougherty join the opinion.

Justice Baer files a concurring and dissenting opinion.

Justice Wecht files a concurring and dissenting opinion.

---

[19] To be precise, the text, "have been separated for a period of at least six months or" is inoperative and paragraph (2), 23 Pa.C.S. §5325(2), as a consequence of severance, now only provides for standing "where the parents of the child have commenced and continued a proceeding to dissolve their marriage[.]"