J-A16011-19

2019 PA Super 215

| | | |
|---|---|---|
| M.S. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.D. | : | |
| | : | |
| | : | No. 159 MDA 2019 |
| APPEAL OF: E.A.S., Intervenor | : | |

Appeal from the Order Entered December 26, 2018
In the Court of Common Pleas of Dauphin County Civil Division at No(s):
2013-CV-06988-CU

BEFORE:   LAZARUS, J., MURRAY, J., and STEVENS*, P.J.E.

OPINION BY LAZARUS, J.:                              **FILED JULY 12, 2019**

E.A.S., paternal grandmother (Grandmother), appeals[1] from the trial court's order denying her petition to intervene in the underlying custody action for lack of standing.  Appellees, M.S. and J.D., are the natural parents of the subject minor child (Child) (born 8/12).  After careful review, we affirm.

Child's parents, M.S. (Father) and J.D. (Mother), were never married.  Grandmother has been actively involved in Child's life.  Mother has consented

_____

[1] This order is appealable as a collateral order pursuant to Pa.R.A.P. 313. **Compare K.C. v. L.A.**, 128 A.3d 774 (Pa. 2015) (order denying petition to intervene in custody action appealable as collateral order where appellant's claim would be manifestly lost if not permitted to appeal order) **with L.J.C. v. A.W.**, 160 A.3d 201 (Pa. Super. 2017) (order denying grandfather standing to seek primary physical custody of grandchild under section 5324(3)(iii)(B) quashed because it was neither final order nor collateral order where grandfather retained right to seek partial physical custody, order appealed not intended to completely resolve custody claims between parties, and claim would not be irreparably lost if review postponed until entry of final order).

_____

*   Former Justice specially assigned to the Superior Court.

to Grandmother's involvement in Child's life, including permitting Child to spend weekends, as well as the entire summer of 2018, at Grandmother's house. N.T. Petition to Intervene Hearing, 10/4/18, at 14. In August 2013, Father filed a custody complaint against Mother. In August 2016, Grandmother filed a petition to intervene; Mother and Father filed a response and preliminary objections to the petition. On September 1, 2016, following a custody conference, Mother and Father agreed to the following custody arrangement: parents share legal custody of Child; Mother has primary physical custody of Child; and Father has partial physical custody of Child, subject to an agreed-upon custodial schedule. Custody Order, 9/1/16. On January 3, 2017, Mother filed an emergency petition seeking sole custody of Child alleging that Father had been physically abusive toward Child. On January 4, 2017, the trial court entered an order granting Mother's emergency petition and awarding her temporary primary physical custody and shared legal custody pending a hearing scheduled on January 24, 2017.

On February 6, 2017, the trial court denied Grandmother's petition to intervene. In June 2017, Father's custodial rights to Child were suspended "pending an investigation by Dauphin County Children and Youth Services and an evaluation of [Father] under [s]ection 5329[2] to determine if [Father]

---

[2] **See** 23 Pa.C.S. § 5329 (court shall consider whether party seeking custody or member of party's household has been convicted of or has pleaded guilty or no contest to any enumerated criminal offense; "court shall consider such conduct and determine that the party does not pose a threat of harm to the child before making any order of custody to that party when considering [delineated] offenses.").

- 2 -

poses a threat of harm to [C]hild." Trial Court Order, 6/22/17. The order further mandated that the evaluation should be conducted by a licensed psychologist at Father's expense and that the psychologist's report be sealed and sent to the trial judge. *Id.* The order suspending Father's custody rights was precipitated by the filing of criminal charges against Father and the issuance of a temporary Protection from Abuse order to protect Father's spouse and her children. On June 27, 2017, the trial court amended its June 22, 2017 order, temporarily suspending Father's partial custody rights under the parties' prior custody order dated September 1, 2016, subject to the same psychological evaluation requirement.[3] On August 3, 2017, Grandmother filed a second petition to intervene. However, Mother and Grandmother reached an agreement regarding custody and Grandmother withdrew her petition on March 19, 2018.

On August 13, 2018, Grandmother filed the instant petition, her third, seeking to intervene and obtain custody of Child, arguing she has legal standing to seek custody pursuant to 23 Pa.C.S. §§ 5324(4) and 5325(2). In her petition, Grandmother seeks primary physical custody or, in the alternative, partial physical custody of child in order "to be able to attend to [his] educational needs . . . in addition to seeing to his personal and emotional welfare." Petition to Intervene and for Custody, 8/13/18, at ¶ 30. Grandmother also avers in her petition that she has a "sustained, substantial,

---

[3] On March 22, 2018, the trial court entered a final order suspending Father's partial custody rights, pending further order of court.

and sincere interest in the welfare of the minor Child." *Id.* at ¶ 29. Grandmother asserts that she is "gravely concerned" for Child's well[-]being since Mother has permitted Father to exercise custody after his rights were suspended by court order, is concerned that neither Mother nor Father "h[as] a genuine interest in. . . Child's well[-]being nor any form of care and control of . . . Child," and believes "it is in the best interest of the minor child to allow [her] to intervene and be granted primary physical custody of [C]hild." *Id.* at ¶¶ 33-34, 37, 43. On October 4, 2018, the trial court held a hearing on Grandmother's petition; the parties were directed to file briefs in support of their respective positions.

On December 26, 2018, the trial judge, the Honorable Edward M. Marsico, Jr., entered an order denying Grandmother's petition to intervene pursuant to 23 Pa.C.S. §§ 5324(3), 5324(4), and 5325(2) of Pennsylvania's Child Custody Act (the Act).[4] Grandmother filed a timely petition to reconsider, which was denied on January 16, 2019. On January 25, 2019, Grandmother filed a timely notice of appeal and contemporaneous Pa.R.A.P. 1925(a)(2) concise statement of errors complained of on appeal.[5] Grandmother presents three issues for our consideration:

---

[4] *See* 23 Pa.C.S. §§ 5301-5366.

[5] We note that the issues raised in Grandmother's Rule 1925(a)(2) statement are much more generalized than those delineated in her appellate brief. We caution counsel that under Rule 1925(b)(4)(ii), the statement "shall concisely

- 4 -

(1) Whether the trial court erred by finding that Intervenor Paternal Grandmother failed to show that the minor child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity.

(2) Whether the trial court erred in failing to consider that presumptively fit parents act in the child's best interests when finding that Intervenor Paternal Grandmother did not meet the requirements for standing under section 5325(2).

(3) Whether the trial court erred in finding that Intervenor Paternal Grandmother failed to show that neither parent has any form of care and control of the child as required under section 5324(4).

Appellant's Brief, at 4 (renumbered for ease of disposition).

Threshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary. *K.W. v. S.L.*, 157 A.3d 498, 504 (Pa. Super. 2017). The concept of standing is vital in ensuring that cases are presented to the court by an individual who has a genuine, and not merely a theoretical, interest in the matter. Thus, the traditional test for standing is that the proponent of the action must have a direct, substantial and immediate interest in the matter at hand. *D.G. v. D.B.*, 91 A.3d 706 (Pa. Super. 2014). In *M.W. v. S.T.*, 196 A.3d 1065 (Pa. Super. 2018), our Court emphasized:

In the area of child custody, principles of standing have been applied with particular scrupulousness because they serve a dual purpose: not only to protect the interest of the court system by assuring that actions are litigated by appropriate parties, but also to prevent intrusion into the protected domain of the family by those who are merely strangers, however well-meaning.

identify each ruling or error that the appellant intends to challenge *with sufficient detail to identify all pertinent issues for the judge.*" Pa.R.A.P. 1925(b)(4)(ii) (emphasis added).

- 5 -

*Id.* at 1069 (citation omitted).

"Generally, the Child Custody Act does not permit third parties to seek custody of a child contrary to the wishes of that child's parents. The Act provides several exceptions to this rule, which apply primarily to grandparents and great-grandparents." *Id.*, citing *K.W.*, 157 A.3d at 504. Grandparents may seek any form of physical or legal custody under section 5324 of the Act, which provides, in pertinent part:

The following individuals may file an action under this chapter for any form of physical custody or legal custody:

\* \* \*

(3) A grandparent of the child who is not *in loco parentis* to the child:

(i) whose relationship with the child began either with the consent of a parent of the child or under a court order;

(ii) who assumes or is willing to assume responsibility for the child; and

(iii) when one of the following conditions is met:

(A) the child has been determined to be a dependent child under 42 Pa.C.S. Ch. 63 (relating to juvenile matters);

(B) the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity; or

(C) The child has for a period of at least 12 consecutive months, resided with the grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, in which case the action must be filed within six months after the removal of the child from the home.

**(4) Subject to paragraph (5),**[6] **an individual who establishes by clear and convincing evidence all of the following:**

(i) The individual has assumed or is willing to assume responsibility for the child.

(ii) The individual has a sustained, substantial and sincere interest in the welfare of the child. In determining whether the individual meets the requirements of this subparagraph, the court may consider, among other factors, the nature, quality, extent and length of the involvement by the individual in the child's life.

**(iii) Neither parent has any form of care and control of the child.**

23 Pa.C.S. § 5324 (emphasis added). Additionally, grandparents and great-grandparents may seek partial physical custody or supervised physical custody under section 5325 of the Act, which provides:

In addition to situations set forth in section 5324 (relating to standing for any form of physical custody or legal custody), **grandparents** and great-grandparents **may file an action under this chapter for partial physical custody or supervised physical custody in the following situations**:

(1) where the parent of the child is deceased, a parent or grandparent of the deceased parent may file an action under this section;

**(2) where the relationship with the child began either with the consent of a parent of the child** or under a court order **and where the parents of the child:**

**(i) have commenced a proceeding for custody; and**

---

[6] Under section 5324(5), paragraph (4) of section 5324 shall not apply if "(i) a dependency proceeding involving the child has been initiated or is ongoing; or (ii) there is an order of permanent legal custody under 42 Pa.C.S. § 6351(a)(2.1) or (f.1)(3) (relating to disposition of dependent child)." 23 Pa.C.S. § 5324(5).

**(ii) do not agree as to whether the grandparents or great grandparents should have custody under this section;** or

(3)     when the child has, for a period of at least 12 consecutive months, resided with the grandparent or great-grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, an action must be filed within six months after the removal of the child from the home.

23 Pa.C.S. § 5325 (emphasis added).[7]

In her first issue on appeal, Grandmother contends that the trial court erred in concluding that she did not prove that Child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity. This argument presupposes the court based its standing decision upon section 5324(3)(iii)(B). Grandmother, however, did not aver that she had standing under section 5324(3)(iii)(B), for purposes of custody, in her petition. Thus, she has waived this argument on appeal. *See* N.T. Petition to Intervene Hearing, 10/4/18, at 19-21.

With regard to Grandmother's second issue, concerning standing under subsection 5325(2)(ii), she contends that "the trial court erred in determining that because Mother and Father agreed that Grandmother should not have custody that she failed to meet the requirements for standing." Appellant's

_____

[7] In 2018, the legislature amended section 5325 by adding introductory language in subsection (2), deleting language from that same subsection, adding the (2)(i) designation, and adding section (2)(ii) in its entirety. These amendments took effect on July 3, 2018, roughly one month before Grandmother filed the instant petition to intervene/for custody.

Brief, at 19. To support her position Grandmother relies upon **D.P. v. G.J.P.**, 146 A.3d 204 (Pa. 2016).

In **D.P.** the Supreme Court struck, as unconstitutional, language found in a prior version of section 5325(2) that granted grandparents standing to seek custody where the child's parents had been separated for at least six months.[8] The Court specifically concluded that the statutory language did not withstand strict scrutiny, violated the parents' fundamental rights under substantive due process, and was not narrowly tailored to a compelling government interest. In **D.P.**, parents mutually agreed that all contact between their children and paternal grandparents should be discontinued. **Id.** at 205. In its analysis, the Court recognized that two then-recent cases, **Hiller v. Fausey**, 904 A.2d 8756 (Pa. 2006), and **Schmehl v. Wegelin**, 927 A.2d 183 (Pa. 2007), were factually distinguishable; the parent in **Hiller** was deceased, and **Schmehl** involved divorced parents. Our Supreme Court stated, "[i]n spite of these differences, **Hiller** and **Schmehl** do inform our inquiry," where **Hiller** "noted that common pleas courts are required to apply a presumption that parents act in their children's best interests, and that such presumption applies regardless of whether the statute facially necessitates it." **D.P.**, 146 A.3d at 212. Despite recognizing this presumption in favor of parents, the **D.P.** Court highlighted the fact that "[t]he focus on standing is

---

[8] The offending language granted grandparents standing where "the parents of the child have been separated for a period of at least six months." 23 Pa.C.S. § 5325(2) (former version of section 5325(2), approved Nov. 23, 2010, eff. in 60 days).

sharpened even further in the present controversy: the common pleas court, unlike in **Hiller** and **Schmehl**, never reached the complaint's merits because it determined that the statutory basis for standing was unconstitutional." **Id.** at 213.

Grandmother contends that based on **D.P.**, "it would seem that the statutory intent behind the newly enacted [s]ection 5325(2) is to promote the relationship between a child and his or her grandparents without intruding upon 'a presumptively fit parent's' fundamental right to make decisions regarding the care, custody, and control of [his or her] children unless there is a compelling state interest." Appellant's Brief, at 22. Grandmother argues that the language of current section 5325(2)(ii), "where the parents do not agree as to whether grandparents should have custody," was intended to reflect the importance of not disturbing parents' unified decision regarding the care, custody and control of their children. **Id.** at 23. Grandmother contends that it was incumbent upon the court to consider the presumption that parents in the instant case were fit and acting in their child's best interests when deciding that they did not want Grandmother to have custody of child. Further, Grandmother argues that the trial court should have considered child's best interest when evaluating standing in light of the fact that the court starts with the premise that fit parents act in their child's best interests.

Instantly, Grandmother claims that Mother's sudden change of mind and agreement with Father that Grandmother should not have custody of Child is not in Child's best interests and that Grandmother should have been given the

opportunity to present evidence to the court that should have been considered in the ultimate standing determination.[9]

First, we note that in **Hiller**,[10] **Schmehl**, and **D.P.**, unlike the current case, the constitutionality of various subsections of Chapter 53 was under attack based on equal protection and substantive due process principles. In those cases the Supreme Court discussed the presumptively fit parent's fundamental right to care for and control his or her child and whether that right was impermissibly infringed upon by the statutes as written. The presumption that a parent acts in a child's best interests goes hand-in-hand with the fact that a fit parent has a fundamental right to raise his or her children without governmental interference.

Here, Grandmother does not challenge the constitutionality of section 5325(2)(ii). Moreover, the **D.P.** Court emphasized the importance of bifurcating parent-grandparent custody proceedings where the process

---

[9] In her appellate brief, Grandmother abandons any argument regarding the interpretation of the phrase "do not agree" in section 5325(2)(ii). **See** Trial Court Opinion, 3/1/19, at 8-14. However, even if we were to consider this argument we do not find the language in section 5325(2)(ii) is either unclear or ambiguous. Under section 5325(2)(ii), a grandparent may file an action for partial physical custody or supervised physical custody "where the parents of the child . . . do not agree as to whether the grandparents . . . should have custody under this section." Here, there is no dispute that Mother and Father agree that Grandmother should not have custody. Thus, the court properly denied Grandmother's petition under section 5325(2)(ii).

[10] **Hiller** involved the now-repealed section 5311, which concerned grandparent custody when a parent is deceased. **Schmehl** involved the now-repealed section 5312 involving grandparent custody when parents' marriage is dissolved or parents are separated.

"serves an important screening function in terms of protecting parental rights[,] . . . facilitating early dismissal of complaints, [and] relieving families of the burden of litigating their merits where a sufficient basis for standing is absent." **D.P.**, 146 A.3d at 213. We conclude that the trial court properly limited its standing analysis to the statutory elements under section 5325(2)(ii) and that, had it delved into the best interests of Child and the fitness of parents, it would have contravened the established bifurcation process inherent in parent-grandparent custody issues under that statute. **See K.C. v. L.A.**, 128 A.3d 774, 779 (Pa. 2015) (standing "is a conceptually distinct [l]egal question which has no bearing on the central issue within the custody action -- who is entitled to physical and legal custody of [a] [c]hild in light of his or her best interests"). Moreover, had the legislature intended the trial court consider the best interests of the child and/or whether parents are presumptively "fit" as part of its grandparent standing analysis, it could have included wording to suggest such in the statute. **See Commonwealth v. Tarbert**, 535 A.2d 1035, 1044 (Pa. 1987) ("Where the language of a statute is clear and unambiguous, a court may not, under the guise of construction, add matters the legislature saw fit not to include at the time.") (citations omitted); **see also Bowser v. Blom**, 807 A.2d 830, 835 (Pa. 2002) (when words of statute are clear and free from all ambiguity, plain language is best indication of legislative intent); **see generally** 1 Pa.C.S § 1921.

Here, Grandmother's contention that Mother and Father are unfit parents where Mother permits Father unrestricted access to Child and has "no

concern for [C]hild's safety or wellbeing," Appellant's Brief, at 25, is properly left to an analysis under section 5324. In fact, section 5324(4) specifically requires a petitioner to prove by clear and convincing evidence that he or she has a "sustained, substantial interest in the welfare of [C]hild [and that] [n]either [Mother nor Father] has any form of care and control of Child." **See** 23 Pa.C.S. § 5324(4)(ii), (iii). Based on the testimony at the October 4, 2018 hearing, the trial court concluded that Grandmother did not prove Mother's[11] lack of care and control over Child. Specifically, the court did not agree that Mother's permissive behavior in allowing Father to visit Child was the equivalent of a "lack of care and control" of Child under section 5324(4). The record supports the trial court's conclusion; while Grandmother may not agree with or care for the way Mother parents Child, Grandmother did not prove by clear and convincing evidence that Mother lacked care and control of Child under section 5324(4)(iii). **See** N.T. 10/4/18, at 22, 26-27.

Thus, we conclude that the trial court did not err in denying Grandmother's petition to intervene in this custody matter for lack of standing under sections 5324(4) and 5325(2).

Order affirmed.

---

[11] Because Father's custodial rights to Child have been suspended, the court did not analyze evidence regarding Father in relation to standing under section 5324(4).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>07/12/2019</u>