J-S83043-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| D.W. AND D.W. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| F.T. AND J.T. | : | |
| | : | |
| Appellees | : | No. 1007 WDA 2016 |

Appeal from the Order Entered June 6, 2016
in the Court of Common Pleas of Indiana County
Civil Division at No(s):  11815 C.D. 2014

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, and STRASSBURGER*, JJ.

MEMORANDUM BY STRASSBURGER, J.:  **FILED JANUARY 27, 2017**

D.W. (Maternal Grandmother) and D.W. (Maternal Grandfather) (collectively, Grandparents) appeal from the order entered June 6, 2016, which denied their complaint for partial physical custody of their grandchildren, J.S.T., a male born in January of 2006; W.M.T., a male born in January of 2008; and P.R.T., a female born in May of 2012 (collectively, Children).  After careful review, we affirm.

The trial court summarized the factual and procedural history of this matter as follows.

> [F.T. (Mother)] and [J.T. (Father)] (hereinafter Parents) were married for approximately seven years and had [ C]hildren during the course of their relationship.  Parents separated in May 2013.  Since May 2013, Father has had primary custody of

_____

* Retired Senior Judge assigned to the Superior Court.

[C]hildren and Mother has had partial supervised custody twice a week. [] Grandparents currently have no custody provision for seeing [C]hildren and testified that they have not been significantly involved or included in [C]hildren['s] lives since the 2013 separation.

In November 2014, 18 months after Parents' separation, Grandparents filed a complaint seeking partial custody of [C]hildren. On January 12, 2015, the [trial] court ordered that the parties attend mediation in hopes of resolving the matter. A mediation conference was held on April 8[], 2015. The parties were unable to reach an agreement at the mediation conference.

Trial Court Opinion, 6/6/2016, at 3.

The trial court held a custody hearing on September 10, 2015. Following the hearing, on November 5, 2015, the court entered an order denying Grandparents' custody complaint. Grandparents appealed. On May 6, 2016, a prior panel of this Court vacated the November 5, 2015 order. **See D.W. and D.W. v. F.T. and J.T.**, 2016 Pa. Super. Unpub. LEXIS 1516, 2016 WL 2625910 (Pa. Super. 2016) (unpublished judgment order). The panel concluded that the trial court erred by failing to discuss the custody factors set forth at 23 Pa.C.S. § 5328(a) in its opinion, and instead discussing only the factors set forth at 23 Pa.C.S. § 5328(c)(1). The panel remanded the case to the trial court for the preparation of an order and opinion considering both sets of factors.

On June 6, 2016, the trial court entered a new custody order, in which it denied Grandparents' custody complaint for a second time. Grandparents again appealed. On December 16, 2016, this Court issued an unpublished memorandum quashing Grandparents' appeal, on the basis that they failed

to file timely their notice of appeal. *See D.W. and D.W. v. F.T. and J.T.*, 2016 Pa. Super. Unpub. LEXIS 4593, 2016 WL 7324301 (Pa. Super. 2016) (withdrawn unpublished memorandum). In concluding that Grandparents' appeal was untimely, we observed that the notice of appeal contained in the certified record is stamped and docketed as having been filed on July 8, 2016, two days after the thirty-day appeal period expired on July 6, 2016. On December 22, 2016, Grandparents filed an application for relief and an application for reargument in this Court. In their applications, Grandparents averred that they timely filed their notice of appeal on July 6, 2016, but that the notice of appeal was filed in this Court by mistake and then forwarded to the trial court. Grandparents attached copies of their notice of appeal to their applications. Unlike the notice of appeal contained in the certified record, the notice of appeal provided by Grandparents includes a Superior Court time stamp, indicating that it was timely filed in this Court on July 6, 2016. *See* Pa.R.A.P. 905(a)(4) (providing that a notice of appeal filed mistakenly in an appellate court will be stamped and forwarded to the clerk of the court which entered the order appealed from, and that the notice will be deemed filed in the trial court on the date it was filed in the appellate court). In light of this new information, we entered a *per curiam* order on January 3, 2017, withdrawing our December 16, 2016 memorandum. Because we are now satisfied that Grandparents' appeal is properly before us, we can proceed to address the merits of the issues presented by Grandparents in their appellate brief.

- 3 -

Grandparents present the following issues for our review.

1. The [t]rial [c]ourt committed an abuse of discretion or an error of law by failing to grant [] [G]randparents any rights of partial physical custody thereby severing all ties between [C]hildren and their [] [G]randparents.

2. The [t]rial [c]ourt committed an abuse of discretion or an error of law by failing to grant [] [G]randparents any rights of partial physical custody whatsoever in direct contravention of long-standing case law and the purpose and intent of 23 Pa.C.S.[] § 5325, *et seq*.

3. The [t]rial [c]ourt committed an abuse of discretion or an error of law in dismissing [Grandparents'] [m]otion for [p]artial [c]ustody despite acknowledging that [Grandparents] have standing in this matter.

4. The [t]rial [c]ourt committed an abuse of discretion or an error of law in failing to consider all of the testimony and evidence on record in making the determination that [] [G]randparents should not have any rights of partial physical custody whatsoever.

5. The [t]rial [c]ourt committed an abuse of discretion or an error of law in misapplying both the law and the evidence presented during trial when reaching its conclusion.

Grandparents' brief at 4.

We consider these issues mindful of our well-settled standard of review.

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately,

the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***V.B. v. J.E.B.***, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

"When a trial court orders a form of custody, the best interest of the child is paramount." ***S.W.D. v. S.A.R.***, 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted). The factors to be considered by a court when awarding custody are set forth at 23 Pa.C.S. § 5328(a).

**(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

In addition, when awarding partial physical custody to a grandparent who has standing pursuant to 23 Pa.C.S. § 5325(1) or (2), the court must consider the following factors.[1]

---

[1] Section 5325(1) and (2) provides as follows.

In addition to situations set forth in section 5324 (relating to standing for any form of physical custody or legal custody), grandparents and great-grandparents may file an action under this chapter for partial physical custody or supervised physical custody in the following situations:

(1) where the parent of the child is deceased, a parent or grandparent of the deceased parent may file an action under this section;

(2) where the parents of the child have been separated for a period of at least six months **or** have commenced and continued a proceeding to dissolve their marriage ….

23 Pa.C.S. § 5325(1)-(2) (emphasis added).

Here, Grandparents contended that they had standing pursuant to the first half of section 5325(2), because Parents were separated for more than six months at the time they filed their custody complaint on November 6, 2014. Grandparents' brief at 5. On September 9, 2016, this portion of section 5325(2) was held to be unconstitutional by our Supreme Court. *See* ***D.P. v. G.J.P.***, 146 A.3d 204, 216 (Pa. 2016) (holding that the portion of section 5325(2) providing for standing due to parental separation for six months "cannot survive strict scrutiny and, as such, it violates the fundamental rights of parents safeguarded by the Due Process Clause"). However, at this juncture, it appears that Parents are divorced. *See* Father's brief at 2 ([C]hildren are in a stable, loving and caring atmosphere and have needed therapy to deal with [P]arents' divorce.").

[P]aragraph (2) is itself divided into two parts and phrased in the disjunctive, as it provides for grandparent standing "where the parents of the child have been separated for a period of at least six months **or** have commenced and continued a proceeding to

*(Footnote Continued Next Page)*

(i) the amount of personal contact between the child and the party prior to the filing of the action;

(ii) whether the award interferes with any parent-child relationship; and

(iii) whether the award is in the best interest of the child.

23 Pa.C.S. § 5328(c)(1).

Instantly, in its June 6, 2016 opinion, the trial court discussed nearly all of the Section 5328(a) factors, as well as the factors listed at Section 5328(c)(1).[2] The court found that Section 5328(a)(3), (4), (9), (10), (12),

_(Footnote Continued)_ _____

dissolve their marriage[.]" 23 Pa.C.S. § 5325(2) (emphasis added). It is noteworthy that these are separate and independent preconditions for grandparent standing, since it is possible for parents who have not been separated for at least six months to commence and continue a dissolution proceeding. Thus, the difficulties apparent in the first half of paragraph (2) do not imply that the second half … is also problematic.

**D.P.**, 146 A.3d at 216. Accordingly, Grandparents continue to have standing in this case on this basis, despite the fact their original basis for standing was deemed unconstitutional. In addition, Parents have not raised an issue with respect to standing, and "[w]e have consistently held that we will not raise standing claims _sua sponte_." **Robinson Twp., Washington Cty. v. Com.**, 83 A.3d 901, 918 (Pa. 2013).

We are aware that Justices Baer and Wecht, the only two justices in **D.T.** who reached the issue of the constitutionality of the second half of paragraph 2, would hold that it is unconstitutional for the same reason as regards the first half of paragraph 2. However, given 1) standing was not raised, 2) we affirm on the merits, and 3) the long-standing practice not to reach a constitutional issue if a case can be decided on other grounds, **see Commonwealth v. Dilworth**, 246 A.2d 859 (Pa. 1968), we decline to address the constitutionality of the second half of paragraph 2.

[2] The trial court failed to address Section 5328(a)(2.1) in its opinion. However, there was no evidence presented during the custody hearing which related to this factor.

(13), and (15), as well as Section 5328(c)(1)(i), (ii), and (iii), weighed in favor of Parents, while Section 5328(a)(7) weighed in favor of Grandparents. Trial Court Opinion, 6/6/2016, at 6-16. The court found that the remaining factors were neutral. *Id.* at 5-12. In concluding that an award of partial physical custody to Grandparents would be contrary to Children's best interests, the court emphasized that Grandparents made little, if any, effort to have contact with Children following Parents' separation. *Id.* at 16. The court further emphasized that Grandparents incited conflict with Parents during the rare occasions that they did have contact with Children. *Id.* at 16-17.

On appeal, Grandparents present five interrelated claims, which we address together. The crux of Grandparents' claims is that the trial court abused its discretion or erred by effectively severing all ties between them and Children. Grandparents' brief at 8. Grandparents challenge the court's factual findings that they failed to have contact with the Children and are a source of constant conflict when they do have contact with Children. Grandparents contend that they visited the Children regularly prior to Parents' separation, and that they attempted to maintain contact with Children after the separation by calling them on the phone. *Id.* at 11, 15. According to Grandparents, their phone calls were rebuffed or never returned. *Id.* at 11-13. Grandparents further contend that any conflict that

arose during their recent visits with Children was caused not by them but by others. *Id.* at 12-13.

Moreover, Grandparents argue that the Child Custody Act does not require grandparents seeking partial physical custody to make constant attempts at contacting their grandchildren, nor does the Act require that grandparents have an amicable relationship with their grandchildren's parents. *Id.* at 8-9, 20. Grandparents assert that hostilities between parties in a child custody action are only relevant to the extent they constitute a threat to the child or affect the child's welfare. *Id.* at 17 (citing *K.T. v. L.R.*, 118 A.3d 1136, 1161 (Pa. Super. 2015)). According to Grandparents, no evidence was presented during the custody hearing which indicates that the animosity between Grandparents and Parents poses a threat to the Children or their welfare. *Id.* at 14, 18. Grandparents also emphasize that Children stated to the trial court during the custody hearing that they would like to visit Grandparents. *Id.* at 10-11, 13.

After carefully reviewing the certified record in this matter, we conclude that the trial court did not abuse its discretion by declining to award Grandparents partial physical custody of the Children. During the custody hearing, Father testified that Grandparents visited with the Children sporadically prior to Parents' separation. Father testified that Mother dropped the Children off to spend the weekend with Grandparents "maybe, once a month." N.T., 9/10/2015, at 56. However, Father noted that

Maternal Grandmother would often call Mother on Saturday and ask her to pick the Children up so she could go play bingo. *Id.*

Father further testified that Grandparents made little, if any, effort to remain in contact with the Children following his separation from Mother. Grandparents did not send letters or cards to the Children, nor did they attend extracurricular activities. *Id.* at 78-79. Father was adamant that Grandparents did not call him or the Children on the phone, although he acknowledged that Grandparents did speak to the Children on the phone on one occasion. *Id.* at 63, 75-76. Moreover, Father testified that Grandparents visited with the Children only three times following Parents' separation, and that these visits resulted in conflict. *Id.* at 58-62.

Father first described a visit that took place in "later 2013," when Maternal Grandmother attended one of Mother's supervised visits with Children at the home of Father's parents. *Id.* at 59. Father reported that "a little altercation" took place after J.S.T. stated that he wanted his paternal grandmother to participate in the game they were playing. *Id.* at 60. According to Father, Maternal Grandmother refused J.S.T.'s request. *Id.* Grandparents also visited with the Children during a birthday party at Chuck E. Cheese in February 2014. *Id.* at 61. Father recalled that Grandparents were the first to arrive at the party, but that they only "were there five or ten minutes. They came over never said a word, picked their jackets up and stormed out." *Id.* Finally, Father testified that Parents, Maternal

Grandmother, and Children, among others, went trick-or-treating during one of Mother's supervised visits. *Id.* at 61-62. Father explained that he was holding the hand of one of Children, but that Maternal Grandmother "ripped his hand out of my hand," stating, "'[t]his is your mother's visitation. Get up here with your mother.'"[3] *Id.* at 62.

In addition to these three visits, Father testified that Grandparents briefly encountered Children at the parties' custody mediation. Father recalled that Maternal Grandmother asked to see Children after the mediation concluded, and Father replied that he would need to consult with his attorney first. *Id.* at 66. After Parents, Children, and Father's attorney entered a room, Maternal Grandmother attempted to push her way in, demanding to see Children and using profanity. *Id.* Mother testified that Children witnessed this incident, and that it caused them distress. Mother stated, "[J.S.T.], was upset about it I do believe. You can tell he was getting tears in his eyes. [W.M.T.] … holds everything in. He was just staring….[Y]ou could tell it bothered them." *Id.* at 94.

Thus, the record supports the trial court's finding that Grandparents had only sporadic contact with Children prior to Parents' separation. Following separation, Grandparents visited with Children on four occasions at

_____

[3] Mother testified that Grandparents also visited Children on a fourth occasion in June 2013, during which Children stayed at Grandparents' home "for a couple of days." N.T., 9/10/2015, at 91.

most.  Grandparents made little, if any, other effort to maintain a relationship with Children.  While Grandparents testified that they attempted to call Children on the phone, the trial court was free to reject this testimony, and to accept the testimony presented by Father that Grandparents did not make phone calls.

Further, the record supports the trial court's finding that Grandparents incited conflict with Parents during the rare occasions that they did visit with the Children.  This conflict poses a considerable threat to Children's welfare, as demonstrated by the distress that Children experienced due to Maternal Grandmother's behavior during the parties' custody mediation.  It was well within the court's discretion to conclude that an award of partial physical custody to Grandparents would be contrary to Children's best interests, given that Grandparents have expressed little, if any, interest in Children over the last several years, and given that such an award would risk creating additional distress and turmoil in Children's lives.

Based on the foregoing, we conclude that the trial court did not abuse its discretion by declining to award partial physical custody of Children to Grandparents.  We therefore affirm the court's June 6, 2016 order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/27/2017