2019 PA Super 91

| | | |
|---|---|---|
| J. & S. O. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| C.H. | : | |
| | : | |
| Appellant | : | No. 1361 MDA 2018 |

Appeal from the Order Entered July 17, 2018
In the Court of Common Pleas of York County Civil Division at No(s):
2014-FC-001854-03

BEFORE:  LAZARUS, J., DUBOW, J., and NICHOLS, J.

OPINION BY DUBOW, J.:                **FILED: MARCH 27, 2019**

Appellant, C.H. ("Father"), appeals from the July 17, 2018 Order entered in the York County Court of Common Pleas, which granted Appellees' ("Maternal Grandparents") Petition for Modification of Custody and awarded Maternal Grandparents partial physical custody of H.H. ("Child") every other Saturday and additional time on holidays and during the summer months. Based on the reasoning of ***Hiller v. Fausey***, 904 A.2d 875 (Pa. 2006), we conclude that 23 Pa.C.S. § 5325, granting standing to grandparents to seek partial custody of their deceased child's children (grandchildren), survives strict scrutiny and is constitutional as applied in this case.  We, thus, affirm.

The relevant factual and procedural history is as follows.  Father and Child's biological mother ("Mother") were married and Child was born in 2009. Child saw Maternal Grandparents on a weekly basis and often spent the night at their home.  Mother passed away in March 2013.

On October 14, 2014, Maternal Grandparents filed a Complaint for Custody, which ultimately resolved with the filing of a Stipulated Order on October 18, 2016. The Stipulated Order awarded Maternal Grandparents partial physical custody of Child three days per month during the school year and seven days per month during the summer months, which could be modified to overnight visitation at the recommendation of Child's therapist.[1]

On October 26, 2017, Maternal Grandparents filed a Petition for Modification of Custody and Contempt of Existing Orders alleging that Father was not complying with the Stipulated Order. After a custody trial, the trial court granted Maternal Grandparents' Petition for Modification of Custody and denied Maternal Grandparents' Petition for Contempt. As stated above, the trial court awarded Maternal Grandparents partial physical custody of Child every other Saturday during the school year, on Christmas Eve, and on four additional days in the summer.

Father timely appealed. Father and the trial court both complied with Pa.R.A.P. 1925.

Father raises the following issues on appeal:

---

[1] In a Pre-Trial Memorandum filed prior to a scheduled custody hearing that never occurred due to parties' agreement, Father raised the issue of whether two custody statutes, 23 Pa.C.S. § 5325 and 23 Pa.C.S. § 5337, were unconstitutional. On November 9, 2016, Father filed a Notice of Appeal raising the same constitutional issues. On October 6, 2017, this Court *sua sponte* determined that the October 18, 2016 Stipulated Order was interlocutory and, therefore, quashed the appeal. *See J.T.O. v. C.H.*, 179 A.3d 540 (Pa. Super. 2017) (unpublished memorandum).

1. Whether the statute granting automatic standing to grandparents at [23 Pa.C.S. § 5325(1)] violates a parent's 14th Amendment rights to due process, as well as of the Pennsylvania Constitution, as the statute does not pass a strict scrutiny analysis where the grandparents have been offered ongoing contact with the grandchild after a parent's death?

2. Whether [23 Pa.C.S. § 5325(1)] creates unconstitutionally disparate treatment for the class in violation of a widowed parent's 14th Amendment rights under the Equal Protection Clause, as well as Article 1, §§ 1 and 26 of the Pennsylvania Constitution, who are subjected to court review of their parenting decisions regarding the amount and length of contact between their child(ren) with grandparents versus those parents in two parent families?

3. Whether by subsequent legislative enactment and application of the anti-relocation provisions contained within [23 Pa.C.S. § 5337] causes [23 Pa.C.S. § 5325] to violate the fundamental rights of parents to make decision concerning their child's care, custody and control as guaranteed to them under the Substantive Due Process Clause of the 5th Amendment as applied by the 14th Amendment of the United States Constitution?

4. Whether due to the enactment of [23 Pa.C.S. § 5337], [23 Pa.C.S. § 5325] violates the Equal Protection Clause of the 14th Amendment of the United States Constitution, and Article 1, §§ 1 and 26 of the Pennsylvania Constitution by its disparate treatment of parents based upon arbitrary parental classification?

Father's Brief at 5-6.

The constitutionality of a statute presents a question of law and this Court's review is plenary. *Schmehl v. Wegelin*, 927 A.2d 183, 186 (Pa. 2007). "A statute duly enacted by the General Assembly is presumed valid and will not be declared unconstitutional unless it clearly, palpably and plainly violates the Constitution." *Id.* (citation and internal quotation marks

omitted). Accordingly, any party seeking to overcome that presumption of validity "bears a heavy burden of persuasion." *Id.*

In his first two issues, Father avers that 23 Pa.C.S. § 5325(1), the underlying statute providing Maternal Grandparents standing in the instant custody matter, is unconstitutional. Father's Brief at 5. Father argues that the statutory provision, which states, "where the parent of the child is deceased, a parent or grandparent of the deceased parent may file an action [for partial physical or supervised physical custody,]" violates both his due process and equal protection rights.[2] *See* 23 Pa.C.S. § 5325(1); Father's Brief at 5.

**Due Process Rights**

Father first contends that Section 5325(1) as applied violates his due process rights to raise his child without government interference. Father's Brief at 13. He asserts that the statute fails to pass strict scrutiny because it is not narrowly tailored to serve a compelling state interest. *Id.* at 15. He contends that Section 5325(1) violates the Due Process Clause because it automatically grants standing to any grandparent when their child is deceased regardless of whether the surviving parent has allowed continued, consistent, and ongoing contact between a child and the grandparents. *Id.* at 5, 15-17.

---

[2] We note that the legislature repealed the prior statute, 23 Pa.C.S. § 5311, in 2010 and replaced it with 23 Pa.C.S. § 5325, which the legislature amended to its current version in 2018.

It is well settled that grandparent visitation and custody statutes generally authorize state action and, therefore, are subject to constitutional limitations. **D.P. v. G.J.P.**, 146 A.3d 204, 210 (Pa. 2016). The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law" or deny any person within their jurisdiction "the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Pennsylvania Constitution provides equivalent protections.[3]

Our Supreme Court has held that Section 5325 infringes upon the right of parents to make decisions regarding the care, custody, and control of their children, a fundamental right that is protected by the Fourteenth Amendment's "due-process and equal-protection guarantees." **D.P.**, **supra** at 210. Because Section 5325 infringes upon a fundamental right, "to survive a due process or equal protection challenge, Section 5325 must satisfy the constitutional standard known as strict scrutiny." **Id.**; **see also Hiller**, **supra** at 885 (holding that we must apply a strict scrutiny analysis when the state infringes upon the fundamental rights of parents to direct the care, custody, and control of their children).

---

[3] The Pennsylvania Constitution, Article 1, Section 1 provides: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Pa. Const. art. I, § 1. Article 1, Section 26 provides: "Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right." Pa. Const. art. I, § 26.

In general, a strict scrutiny analysis examines whether the governmental action is narrowly tailored to a compelling state interest. ***D.P., supra*** at 210. "[T]he inquiries per the Due Process and Equal Protection Clauses are distinct but overlapping: pursuant to the former, the government's infringement on fundamental rights must be necessary to advance a compelling state interest, whereas under the latter it is the classification inherent in the statute which must be necessary to achieve that interest." ***Id.*** (citation omitted).

The compelling state interest at issue in grandparent custody and visitation statutes is the state's longstanding interest in protecting the health and emotional welfare of children and promoting their well-being. ***See Hiller***, ***supra*** at 886; ***D.P., supra*** at 211. Our Supreme Court, like the United States Supreme Court, has frequently approved of the state's exercise of its *parens patriae* interest and allowed infringements on parental rights where the welfare of children is at stake.[4] ***Hiller, supra*** at 886. Specifically, this has occurred in cases where our Supreme Court has permitted termination of parental rights, declarations of dependency, and grants of custody to non-biological parents over the objection of biological parents. ***Id.***

_____

[4] "*Parens patriae*, literally 'parent of the country,' refers . . . to the role of the state as sovereign and guardian of persons under a legal disability to act for themselves such as juveniles, the insane, or the unknown." ***D.P. v. G.J.P.***, 146 A.3d 204, 211 n.9 (Pa. 2016) (citation omitted).

Applying these principles to this case, we start with the proposition that the protection of the welfare of children, including ensuring that children of deceased parents are not deprived of beneficial relationships with their grandparents, is a compelling state interest. *See D.P., supra* at 211. We must next determine whether Section 5325(1) is narrowly tailored to serve that interest. *See Hiller, supra* at 886. We find that it is.

We are guided by *Hiller, supra*, where our Supreme Court addressed the constitutionality of Section 5311, the prior statute granting standing to grandparents whose child has died.[5] In *Hiller*, the maternal grandmother and the child saw each other daily and had a close relationship prior to the mother's death. *Id.* at 877. After mother's death, the father suspended frequent contact and the child only saw maternal grandmother a few times throughout the year following mother's death. *Id.* The grandmother filed for partial custody and, after a hearing, the trial court awarded grandmother physical custody of the child one weekend per month and one week in the

_____

[5] 23 Pa.C.S. § 5311 (repealed) stated:

> If a parent of an unmarried child is deceased, the parents or grandparents of the deceased parent may be granted reasonable partial custody or visitation rights, or both, to the unmarried child by the court upon a finding that partial custody or visitation rights, or both, would be in the best interest of the child and would not interfere with the parent-child relationship. The court shall consider the amount of personal contact between the parents or grandparents of the deceased parent and the child prior to the application.

summer. *Id.* Father appealed, challenging the constitutionality of the trial court's application of the statute. This Court affirmed.

On review, our Supreme Court also affirmed, holding that the application of the portion of the statute, which allowed visitation or partial custody to grandparents upon death of a child's parent, did **not** violate the father's due process right to direct the care, custody, and control of his child. *Id.* at 890. Most relevant to our analysis, the Court held that the prior statute, which is nearly identical to the current Section 5325(1), survived a strict scrutiny analysis, observing that it "narrowly limits those who can seek visitation or partial custody not merely to grandparents, **but specifically to grandparents whose child has died**." *Id.* at 886 (emphasis added).

The Court observed that there is a policy interest in permitting continued contact with grandparents, particularly because "grandparents have assumed increased roles in their grandchildren's lives and our cumulative experience demonstrates the many potential benefits of strong inter-generational ties." *Id.* While the Court recognized that a grandparent's desire for partial physical custody would not prevail over a fit parent's decision to limit contact in all cases, it refused "to close our minds to the possibility that in some instances a court may overturn even the decision of a fit parent to exclude a grandparent from a grandchild's life, **especially where the grandparent's child is deceased and the grandparent relationship is longstanding and significant to the grandchild**." *Id.* at 887 (emphasis added).

Finally, the Court recognized that the statute balanced the state's interest and parent's rights when it required courts to ensure that the visitation or partial custody would not interfere with the parent-child relationship and was in child's best interest. ***Id.*** The Court acknowledged that the statute required courts to consider the amount of contact between a grandparent and a grandchild before the petition was filed. ***Id.***

The current provision, Section 5325(1), is virtually identical to the statute that was at issue in ***Hiller***. Both are narrowly tailored to provide grandparents and great-grandparents standing to file for partial physical custody where the parent of the child is deceased. ***See*** 23 Pa.C.S. § 5325(1); 23 Pa.C.S. § 5311 (repealed). ***See also Hiller, supra*** at 886. As with the prior statute, Section 5325(1) advances the longstanding compelling state interest of protecting the health and emotional welfare of children by creating an opportunity for the child to have a relationship with the family of the child's deceased parent. ***See Hiller, supra*** at 886. Also, it is narrowly tailored to limit those who can seek visitation or partial custody specifically to grandparents whose child has died. ***See id.*** Section 5325(1), like Section 5311, thus, passes strict scrutiny. Accordingly, pursuant to the reasoning and analysis in ***Hiller***, we conclude that Section 5325(1) does not violate Father's due process rights to direct the care, custody, and control of Child.

Father argues, without citing the record, that ***Hiller*** does not apply in this case because ***Hiller*** addressed a "distinctly different factual scenario [from] the case at hand, one where after one parent's death, the other parent

refused a grandparent contact with the child[.]" Father's Brief at 15. Father argues that Section 5325(1) is not structured with precision because it requires no advance showing by grandparents that they are actually being denied visitation with their grandchild. Father's Brief at 16-17. We reject Father's attempt to distinguish the applicability of *Hiller*.

As in *Hiller*, we recognize that Section 5325(1) is narrowly tailored because it applies specifically to grandparents whose child has died. Appellant has provided no support for his claim that standing to seek partial physical custody required any factual basis beyond that provided quite precisely in the statute. *See* 1 Pa.C.S. § 1921(b) (stating "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). Father's contention ignores the fact that all custody considerations are based on the best interests of the child and a statute granting standing does not change that. We, thus, reject Appellant's attempt to distinguish *Hiller.*

Further, Father's reliance on *Troxel v. Granville*, 530 U.S. 57 (2000) and *D.P., supra* – both cases where grandparent custody statutes were found to be unconstitutional – to support his argument that Section 5325(1) is unconstitutional is unpersuasive. Both cases are easily distinguished from this case.

In *Troxel*, the fact pattern is similar to the instant case where a grandparent sought visitation with a grandchild after the death of a parent. The United States Supreme Court found the underlying statute to be

- 10 -

unconstitutional because the Washington statute provided that **any** person may petition the court for visitation at **any** time. *Troxel, supra* at 67. In contrast, Section 5325(1) limits petitioners to grandparents who have a deceased child.

*D.P.* is, likewise, easily distinguished from this case. *In D.P., supra*, our Supreme Court found now-repealed Section 5325(2), which granted standing to a grandparent to seek custody of a grandchild if the child's parents were separated for at least six months, to be unconstitutional. First and foremost, *D.P.* addresses an entirely different section of the statute. Further, the Court in *D.P.* specifically distinguished the statute at issue in *D.P.*, which granted standing to grandparents of separated parents, from a statute granting standing to grandparents who have a deceased child, stating that when parents are separated "there is no void stemming from the death of a parent." *D.P.* at 215.

Accordingly, as stated above, we conclude that Section 5325(1) does not violate Father's due process rights to direct the care, custody, and control of Child. Pennsylvania has a longstanding interest in protecting children and promoting their well-being, and the statute is narrowly tailored to grant standing to seek custody only to grandparents whose child has died, rather than all grandparents.

**Equal Protection Rights**

Father next avers that Section 5325(1) violates his equal protection rights by subjecting a class of individuals, namely widowers, to court review

- 11 -

of their parenting decisions regarding grandparent visitation when non-widowed parents are not subject to such review. Father's Brief at 17. Father once again argues that the statute does not survive a strict scrutiny analysis because it is not narrowly tailored to ensure a compelling state interest. *Id*. at 17-18.

As discussed above, when examining whether Section 5325(1) violates Father's equal protection rights we must employ a strict scrutiny analysis to determine if the classification inherent in the statute is necessary to achieve the compelling state interest of protecting children and ensuring their well-being. *See D.P., supra* at 210. Since we held, *supra*, that Section 5325(1) does not violate Father's due process rights because the statute is narrowly tailored to grant standing only to grandparents whose child has died, it is axiomatic that the classification inherent in the statute – parents who are widowers – is necessary to achieve the same interest. It is impossible to grant standing to grandparents whose child has died without singling out widowed parents.

Accordingly, we find that Section 5325(1) does not violate Father's equal protection rights because the classification inherent in the statute is necessary to achieve the compelling state interest of protecting children and ensuring their well-being.

## Section 5337 – Relocation

In Father's final two issues, he avers that 23 Pa.C.S. § 5337, a statute that prohibits a parent from relocating unless every individual who has custody

rights to the child consents or the court approves the proposed relocation, is unconstitutional as it relates to Section 5325(1), the statute granting automatic standing to grandparents who have deceased children. Father's Brief at 5-6. Father argues that because of the concomitant rights granted under Section 5337, allowing grandparents to acquire custodial rights over the objection of a fit parent pursuant to Section 5325(1) enables grandparents to "frustrate the parents' decision on the fundamental right to decide where to live and raise their child[.]" Father's Brief at 21. Father's challenge is premature.

Father did not file a pleading requesting relocation and Father did not offer any testimony that he planned to relocate. Maternal Grandparents argue that Father is essentially seeking an "advisory opinion" on the constitutionality of Section 5337 without a relocation request before the court. Maternal Grandparents' Brief at 20. We agree and decline to address these issues. **See Gulnac by Gulnac v. South Butler County School Dist.,** 587 A.2d 699, 701 (Pa. 1991) (stating a declaratory judgment must not be employed "to determine rights in anticipation of events which may never occur" or "as a medium for the rendition of an advisory opinion which may prove to be purely academic.")

For the reasons discussed above, we find that Section 5325(1) does not clearly, palpably, and plainly violate the Constitution. Accordingly, we affirm.

Order affirmed.

Judge Lazarus joins the opinion.

- 13 -

Judge Nichols concurs in result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/27/2019