J-A01019-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| THEODORE WORNER AND ADELINA WORNER | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LAUREN N. STONE | : | |
| | : | No. 2260 EDA 2023 |
| Appellant | : | |

Appeal from the Order Entered August 23, 2023
In the Court of Common Pleas of Philadelphia County
Domestic Relations at No(s):  XC2200813

BEFORE:    LAZARUS, P.J., PANELLA, P.J.E., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.E.:             **FILED FEBRUARY 2, 2024**

Lauren N. Stone ("Mother") appeals from the order filed in the Philadelphia County Court of Common Pleas that denied her exceptions and granted Theodore Worner and Adelina Worner ("Paternal Grandparents"), partial physical custody of their granddaughter, G.W. (d.o.b. 11/2018). We affirm.

Mother and G.W.'s father, Joey Worner ("Father"), separated in 2021, and Father subsequently died in March 2022. On November 28, 2022, Paternal Grandparents filed a Complaint for partial custody of G.W. pursuant to section 5325(1) of the Grandparents' Custody Act, which provides, in pertinent part, that "grandparents and great-grandparents may file an action … for partial

_____

[*] Retired Senior Judge assigned to the Superior Court.

physical custody or supervised physical custody … where the parent of the child is deceased[.]" 23 Pa.C.S.A. § 5325(1). The Custody Hearing Officer held a two-day hearing on the Complaint on February 1, 2023 and March 6, 2023, at which the following relevant facts were adduced.

Prior to June 2021, G.W. shared a close relationship with Paternal Grandparents and spent a significant amount of time with them. In 2019, Paternal Grandparents shared childcare responsibilities with Lisa Stone ("Maternal Grandmother") when Mother returned to work. *See* N.T. Hearing, 2/01/23, at 20. In September 2020, Paternal Grandparents assumed full-time care of G.W. on Tuesdays through Fridays. *See id.* at 18-21, 61-62; N.T. Hearing, 3/06/23, at 56. Paternal Grandparents introduced videos into evidence that showed how happy G.W. was in their care. *See* N.T. Hearing, 2/01/23, at 22-26.

In June 2021, G.W. suffered an elbow dislocation while at Paternal Grandparents' home. Paternal Grandmother explained that G.W. forcefully pulled away while she was changing her, almost falling off the table. *See id.* at 49-50. In an effort to avoid the fall, Paternal Grandmother caught G.W.'s elbow, causing it to come out of its socket, a condition called, "nursemaid's elbow." *Id.* at 50; *see id.* at 51-52, 100. Paternal Grandfather contacted Mother, who immediately took G.W. to the hospital, where staff easily put her elbow back in its socket. G.W. did not require x-rays or follow-up care, has no

long-term injury, and neither hospital staff nor Mother or Father contacted DHS about the incident. *See id.* at 108.

Soon after the incident, Paternal Grandfather texted Mother to check on G.W., and Mother said that G.W. was "feeling fine Just a little sore." N.T. Hearing, 3/06/23, at 81-82, 84. Mother admitted she had experienced nursemaid's elbow as a child herself and it "wasn't a big deal." N.T. Hearing, 2/01/23, at 57, 68. However, Mother testified that, after the June 2021 incident, Mother and Father decided to no longer have Paternal Grandparents take care of G.W. *Id* at 1, 106. This conflicted with text message evidence introduced by Paternal Grandparents that reflected Mother and Father told them that they no longer needed to care for G.W. because she had been on a waiting list to attend a particular daycare and finally had been approved around that time. Mother claimed that they only told Paternal Grandparents this story so as not to hurt their feelings.

Over the years, Father had been in and out of drug rehabilitation facilities for his substance abuse issues. *See id.* at 77; N.T. Hearing, 3/06/23, at 36. After Mother and Father separated in October 2021, Father lived with Paternal Grandparents who saw G.W. during his periods of custody, which Mother conceded G.W. enjoyed. *See* N.T. Hearing, 2/01/23, at 59, 65-67. In October 2021, Father even left G.W. alone with Paternal Grandparents for a couple of hours. *Id.* at 67. In January 2022, Father entered an in-patient

rehabilitation program. He was discharged in February 2022, but subsequently died on March 27, 2022. *Id.* at 63.

After Father's funeral, Mother brought G.W. to Paternal Grandparents' home to pick up a check, which contained donations Paternal Grandmother had requested for G.W. and Mother in lieu of flowers. *See id.* at 29. Mother also brought G.W. to the home one other time to pick up Father's death certificate so she could apply for social security benefits. *See id.* at 14-15, 71. After that, Mother "ghosted" Paternal Grandmother and would not let Paternal Grandparents see G.W., including preventing them from having any contact when they dropped off Easter and Halloween gift baskets for her. *Id.* at 79; *see id.* at 15, 27-28.

Although Mother and Paternal Grandmother have no relationship anymore and Mother does not communicate with any other members of G.W.'s paternal family, Mother testified that she and Paternal Grandfather text regularly, have a good relationship and that she trusted him to care for G.W. *See id.* at 84; N.T. Hearing, 3/06/23, at 71. In fact, in July 2021, Mother texted Paternal Grandfather to wish him a happy birthday. *See* N.T. Hearing, 3/06/23, at 88.

Because the parties did not conclude testimony on February 1st, the Hearing Officer scheduled a second day to continue the hearing, March 6th. At the commencement of the March 6th hearing, Mother mentioned her intent to present the testimony of Maternal Grandmother for the first time. *See id.* at

7. When asked for a proffer, Mother's counsel explained that Maternal Grandmother would testify about her interactions with Paternal Grandparents, what she witnessed of them and how they treated G.W. and Mother. **See id.** at 8. Paternal Grandparents' counsel stipulated that Maternal Grandmother's testimony would be negative toward his clients. The Hearing Officer precluded Maternal Grandmother from testifying due to the unfair surprise and the fact that her testimony would be cumulative.

On March 10, 2023, the Hearing Officer entered the Proposed Order and Findings of Custody Hearing Officer. She recommended that Paternal Grandparents have partial physical custody of G.W. for at least four hours, once a month, at a time agreed to by Mother, but if the parties could not agree, custody would be on the third Saturday of each month. The Officer found that G.W. and Paternal Grandparents "enjoyed a significant [and] loving relationship[,] [and that] limited partial custody, overseen by Paternal Grandfather," was not only in the best interest of G.W. but it also addressed any safety concerns of Mother. Proposed Order and Findings of Custody Hearing Officer, 3/10/23, at 4.

Mother timely filed fifteen exceptions to the recommendation, and the trial court held a hearing on them on August 23, 2023. It denied the exceptions and adopted the Proposed Order and Findings. Mother timely appealed and contemporaneously filed a concise statement of errors complained of on

appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). She also filed a motion for stay pending appeal that the court denied.

On appeal, Mother raises one claim for our review in which she argues that the trial court abused its discretion in adopting the Proposed Order and Findings of the Hearing Officer and granting partial physical custody of G.W. to Paternal Grandparents over her objection. **See** Mother's Brief, at 1. She maintains the court did not apply either the "special weight" to her decision about G.W. that federal law requires under **Troxel v. Granville**, 530 U.S. 57 (2000), or the "clear and convincing evidence" standard required by Pennsylvania law. **See id.** In the argument section of her brief, Mother also complains that the Hearing Officer erred when she precluded maternal grandmother from testifying.[1] **See id.** at 31.

Our standard of review of these claims is deferential:

> Our standard of review over a custody order is for a gross abuse of discretion. Such an abuse of discretion will only be found if the trial court, in reaching its conclusion, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record.
>
> In reviewing a custody order, we must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the trial court who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its

---

[1] Although it is well-settled that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby," we will provide a brief review of this claim. Pa.R.A.P. 2116(a).

factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Rogowski v. Kirven*, 291 A.3d 50, 60-61 (Pa. Super. 2023) (internal citations, brackets, and quotation marks omitted).

Here, the trial court adopted the Proposed Order and Findings of the Custody Hearing Officer after the parties appeared at a custody conference before her. In such a situation we have explained:

Where ... the parties proceed by agreement before a hearing officer on the issues of standing and partial custody for purposes of visitation, the trial court is required to make an independent review of the record to determine whether the hearing officer's findings and recommendations are appropriate. *See generally* Pa.R.C.P. 1915.4-1, 1915.4-2. Although advisory, the hearing officer's report and recommendations are given the fullest consideration particularly on the issue of credibility of witnesses, which the trial court is not empowered to second-guess. *See generally Neil v. Neil*, 731 A.2d 156 (Pa. Super. 1999) (holding that reviewing court may not second-guess hearing officer's credibility determinations).

*K.B. v. M.F.*, 247 A.3d 1146, 1150 (citation omitted).

Mother first claims the trial court abused its discretion by adopting the Findings and Proposed Order because granting partial custody to Paternal Grandparents violated her federal due process rights and failed to give her decisions regarding G.W. the "special weight" identified in *Troxel*. Mother's Brief, at 1.

We first consider whether this argument is properly before us or whether, as the trial court found and Paternal Grandparents maintain, Mother

- 7 -

waived the argument by raising it for the first time in her Rule 1925(b) statement. **See** Trial Court Opinion, 10/03/23, at 15-16; Appellees' Brief, at 10-11.

It is well-settled that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a); As such, issues raised for the first time in a Rule 1925(b) statement are waived. **see Estate of O'Connell ex. rel. O'Connell v. Progressive Ins. Co.**, 79 A.3d 1134, 1140 (Pa. Super. 2013)..

Our review of the record confirms the observation of the trial court and Paternal Grandparents that Mother raised her arguments about the Hearing Officer's failure to apply the "special weight" identified in **Troxel** or that granting Paternal Grandparents partial physical custody violates her federal due process rights for the first time in her Rule 1925(b) statement. Therefore, these claims are waived. **See Estate of O'Connell**, 79 A.3d at 1140; Pa.R.AP. 302(a).

However, even if not waived, Mother's claims would not merit relief.

Similar to the circumstances before us, **Troxel** involved a grandparent seeking partial physical custody of a grandchild after a parent's death. The United States Supreme Court found the Washington statute on which the grandparent relied to be unconstitutionally broad because it directed "that **any** person may petition the court for visitation at **any** time." **J. & S.O. v. C.H.**, 206 A.3d 1171, 1177 (Pa. Super. 2019) (citing **Troxel**, 530 U.S. at 67)

(emphases in original). However, in *J. & S.O.* this Court concluded that *Troxel*'s holding was inapplicable to the Pennsylvania Grandparents' Custody Act because section 5325(1) is narrowly tailored to grandparents whose child has died. *See id.* at 1177-78.

Additionally, although Mother argues the Grandparents' Custody Act is "constitutionally infirm because it does not require [] a showing of harm" before a court may intervene into a fit parent's authority, the Pennsylvania Supreme Court rejected such an argument in *Hiller v. Fausey*, 904 A.2d 875 (Pa. 2006). Mother's Brief, at 17-18 n.1. There, the Court concluded that, although proof of "significant harm" could justify longer periods of visitation, such harm is implicit in the statute and "requiring grandparents to demonstrate that the denial of visitation would result in harm in every [section 5325(1)] case would set the bar too high, vitiating the purpose of the statute and the policy [of ensuring] the continued contact between grandchildren and grandparents when a parent is deceased." *Id.* at 890; *see id.* at 890 n.24.

Moreover, Mother's focus on the language of *Troxel* that she should have been afforded "special weight" that is somehow more than the presumption already afforded to such parents is not availing. As explained further in Justice Newman's concurrence in *Hiller*, in cases involving grandparent custody, "the court must presume that a fit parent's decision is in the best interest of the child, and the court may reach a decision contrary

to the wishes of the parent only if there is evidence sufficient to overcome that presumption. ***Troxel*** goes no further." ***Id.*** at 902; ***see also J. & S.O.***, 206 A.3d at 1177 (holding that the Pennsylvania Grandparents' Custody Act does not violate the surviving parent's due process rights).

Therefore, as aptly observed by the Paternal Grandparents, "[t]he ultimate decision [of when to grant custody to grandparents] is based on the amount of prior contact that grandparents had with the child, whether an award would interfere with the parent-child relationship, and what is in the best interest of the child." ***See*** N.T. Hearing, 3/06/23, at 161; ***see also*** 23 Pa.C.S.A. § 5328(c). This is precisely what the Hearing Officer considered when reaching her decision. ***See*** Proposed Order and Findings of Custody Hearing Officer, 3/10/23, at 4 (finding G.W. spent approximately four days a week with Paternal Grandparents with whom she had loving, close relationship until Mother stopped all contact; that a narrowly tailored custody order would not interfere with G.W. and Mother's relationship; and spending time with her deceased father's family is in G.W.'s best interest). Mother's claim that the custody order violates her federal constitutional rights and ***Troxel*** lacks merit.

Mother next argues her Pennsylvania Constitutional rights were violated because the Custody Hearing Officer failed to apply the clear and convincing

evidence standard before granting Paternal Grandparents partial physical custody. *See* Mother's Brief, at 21.[2]

"[I]n a dispute between a parent and … a grandparent, the parent has a *prima facie* right to custody which will be forfeited only if convincing reasons appear that the child's best interest will be served by an award to [the grandparent]." ***Douglas v. Wright***, 801 A.2d 586, 590-91 (Pa. Super. 2002) (citation omitted). "The burden is on grandparents seeking rights under [section 5325(1)] to demonstrate that partial custody or visitation in their favor is in the child's best interest and will not interfere with the parent-child relationship." ***Id.*** (citations omitted).

In addition to the sixteen custody factors outlined in section 5328(a), when deciding whether to award partial physical custody to a grandparent who has standing pursuant to section 5325(1), as we stated previously, the tribunal must consider: (1) the amount of personal contact between the child and the party prior to the filing of the action, (2) whether the award interferes with any parent-child relationship, and (3) whether the award is in the best

---

[2] Paternal Grandparents maintain that Mother is relying on an incorrect legal burden for this argument because this burden is found in Section 5327, which only applies where a party is seeking primary physical custody. *See* Paternal Grandparents' Brief, at 13; 23 Pa.C.S.A. § 5327(b). This is not persuasive because a review of Mother's brief reveals she only mentioned Section 5327(b) when directly quoting the Hearing Officer. *See* Mother's Brief, at 11; Proposed Order and Findings of Custody Hearing Officer, 3/10/23, at 3..

interest of the child. **See** 23 Pa.C.S. § 5328(c); **see also** 23 Pa.C.S.A. § 5328(a).

"[T]he goal in each case is to foster those relationships which will be meaningful for the child, while protecting the child from situations which would have a harmful effect. Factors to consider in determining the best interests of the child include the child's 'physical, intellectual, emotional and spiritual well-being.'" **Douglas**, 801 A.2d at 591 (citations omitted).

Instantly, the Custody Hearing Officer explained:

> Paternal Grandparents are requesting partial physical custody of the child. Mother, however, feels that Paternal Grandparent[s] should not be afforded any custodial time with the child. Paternal Grandparents shared a loving, close relationship with the child until she was injured. Then, both Mother and Father decided together to revoke their consent and deny Paternal Grandparents unsupervised time with the child. Unfortunately, the [c]ourt does not have the benefit of Father's testimony to know how strongly Father felt about the situation. The [c]ourt cannot ascertain whether Father agreed with Mother to keep the peace or whether he felt as vehemently as Mother did. Prior to Father's death, he was living with Paternal Grandparents and their custody rights would have been derivative of Father's rights. Sadly, Father has passed and the [c]ourt must now consider if it is in child's best interest to never see her grandparents again as Mother has requested.

> Prior to the child's injury, the child enjoyed a significant relationship with Paternal Grandparents. The child saw them nearly every day and it is clear from the demeanor of Paternal Grandparents, video evidence presented, and text message evidence discussed in the hearing that the child shared a loving relationship with Paternal Grandparents. An award of partial physical custody would not interfere with the parent child relationship. Mother testified she and the child share a close bond. An appropriately tailored award of custodial time to Paternal Grandparents would not be overly burdensome or interfere with the child's scheduled activities. As Paternal Grandparent[s']

- 12 -

counsel argued, their intent is not to replace Mother or Father in the child's affection but to maintain the loving relationship they had developed with their granddaughter. Finally, this Custody Hearing Officer believes it would be in the child's best interest to award Paternal Grandparents partial physical custody. One of the factors the [c]ourt must consider in determining the best interest of the child is the availability of extended family. Now more than ever, it is important for the child to remain connected to Father's extended family. Mother testified that she has lost contact with other members of Father's extended family following the discord with Paternal Grandparents. Providing limited custodial time, overseen by Paternal Grandfather, provides the child the opportunity to remain connected with Father's extend[ed] family while addressing Mother's safety concerns.

Custody Hearing Officer's Report and Recommendation, 3/10/23, at 4.

Based on our independent review of the record, we discern no abuse of discretion. The record confirms that prior to Mother denying Paternal Grandparents any contact with G.W., they had a loving relationship with her in which they saw her multiple times per week. The state has a strong interest in preserving this relationship between G.W. and her deceased father's family. The narrowly tailored order only grants Paternal Grandparents four hours per month with their grandchild, with Paternal Grandfather, with whom Mother admits she has a good relationship, present at all times. Mother's claim that the Paternal Grandparents failed to produce sufficient evidence to support the partial custody award lacks merit.

Nor are we persuaded by Mother's summary claims that the Custody Hearing Officer failed to apply certain custody factors.

The Custody Act provides, in pertinent part, that, "in ordering any form of custody, the court shall determine the best interest of the child by considering …

> (4) The need for stability and continuity in the child's education, family life and community life[,] … (9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs[, and] (13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

23 Pa.C.S.A. § 5328(a)(4), (9), (13).

Mother's entire argument in support of this issue is that:

> [T]he lower court incorrectly applied factor 4 in light of the evidence showing that mother has been the primary source of stability and safety for the child. The lower court incorrectly applied factor 9 in light of the evidence showing that the mother has maintained a loving, stable, consistent, and nurturing relationship with the child and has supported her emotional needs. The lower court incorrectly applied factor 13 in light of the evidence showing a high degree of conflict between the mother and the paternal grandparents at the time of the grandparents' petition.

Mother's Brief, at 30-31.

No one disputes that Mother has been G.W.'s primary source of stability who maintains a loving environment for her. Paternal Grandparents' four hours per month certainly will not conflict with this. Also, although Mother and Paternal Grandmother seem to have a contentious relationship, Mother and Paternal Grandfather have a good one and he will be present during any custodial time. Mother's argument lacks merit.

Finally, Mother contends that the Custody Hearing Officer abused her discretion when she precluded Maternal Grandmother from testifying, thereby infringing on Mother's due process rights to a fair trial. **See** Mother's Brief, at 31. We disagree.

It is well-settled that our standard of review of the Custody Hearing Officer's evidentiary ruling is for an abuse of discretion. **See Commonwealth v. Walter**, 93 A.3d 442, 450 (Pa. Super. 2014) (citation omitted). "[P]rocedural due process requires, at its core, adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case. Due process is flexible and calls for such procedural protections as the situation demands." **Interest of K.L.**, 296 A.3d 1267, 1272 (Pa. Super. 2022) (citation omitted).

In this case, Mother had the opportunity to be heard over the course of a two-day hearing. Specifically, the Custody Hearing Officer conducted a hearing on February 1, 2023, and when it became evident that the parties would not finish, she scheduled a second day for March 6, 2023. Mother, who was represented by two different counsel, had the opportunity to testify on her own behalf, present evidence and cross-examine Paternal Grandparents.

At the March 6, 2023 hearing, Mother advised, for the first time, that she intended to present Maternal Grandmother as a witness, proffering that Maternal Grandmother would testify "about her interactions with the Paternal Grandparents, and what she's witnessed, with how the Paternal Grandparents

are with [G.W.], as well as how the Paternal Grandparents are with [Mother]." N.T. Hearing, 3/06/23, at 8. Paternal Grandparents' counsel argued that Maternal Grandmother's testimony was irrelevant and he agreed to stipulate that she would "say negative things about [his] client[s], and they behaved badly, and that they don't behave well with the child." *Id.* at 124.

We discern no abuse of discretion in the Hearing Officer's preclusion of this testimony on the bases that the lack of notice prejudiced Paternal Grandparents and because her proposed testimony would be cumulative of Mother's. *See id.* at 130. Mother's final issue lacks merit.[3]

In their response brief, Paternal Grandparents seek attorney's fees, arguing that this appeal is frivolous and brought only to delay their seeing G.W. *See* Paternal Grandparents' Brief, at 21-23. It is well-settled that "[t]he general rule is that the parties to litigation are responsible for their own counsel fees and costs unless otherwise provided by statutory authority, agreement of the parties, or some other recognized exception." *Wrenfield Homeowners Ass'n, Inc. v. DeYoung*, 600 A.2d 960, 962 (Pa. Super. 1991). Pursuant to Pa.R.A.P. 2744, this Court may award reasonable counsel

_____

[3] We are not persuaded by Mother's reliance on *Commonwealth v. Ward*, 605 A.2d 796 (Pa. Super. 1992), in support of this issue. *See* Mother's Brief, at 32. *Ward* was a criminal case in which the trial court precluded the testimony of a police detective that individuals other than the defendant had a motive to commit the crime at issue. This is wholly irrelevant to the situation here, where Mother sought to introduce a surprise witness in a custody trial whose testimony would have been cumulative.

- 16 -

fees if we "determine[] that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious." Pa.R.A.P. 2744(1).

We deny Paternal Grandparents' request. While ultimately we conclude that Mother's appeal lacks merit, we cannot find that, on their face, the issues raised by Mother could only be perceived as frivolous delay tactics justifying sanctions.

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/2/2024