J-S23045-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| WAFA IBRAHIM | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MONIR GREENE | : | |
| | : | |
| Appellant | : | No. 1012 EDA 2024 |

Appeal from the Order Entered February 22, 2024
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2023-23264

BEFORE:   STABILE, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED AUGUST 9, 2024**

Monir Greene ("Mother") appeals from the order granting partial physical custody of her two sons, Mu.I. and Ma.I. (collectively, "Children"), to their paternal grandmother, Wafa Ibrahim ("Grandmother").  After careful review, we affirm.

Mu.I. was born in December 2021 to Mother and Eyad Ibrahim ("Father"), who had an on-again-off-again relationship.  After Mu.I.'s birth, Father spent most of his time in the home that Grandmother shared with Father's father and Father's adult sister.  Mu.I. visited Grandmother's home regularly from when he was several months old, and, beginning in December 2023, Mu.I. spent several nights per week there while Mother was on work assignments.  During the time Mu.I. spent with Father and Grandmother,

_____

[*] Retired Senior Judge assigned to the Superior Court.

Grandmother assumed the vast majority of childcare responsibilities. Mother and Father's younger son, Ma.I., was born in July 2023. Father, who struggled with drug abuse issues, died of an accidental overdose on September 17, 2023.

On October 19, 2023, Grandmother filed a complaint seeking partial physical custody of Children, whom she had not seen since Father's funeral. A hearing was held on the custody complaint on February 12, 2024, at which testimony was taken from the following witnesses: Grandmother; Father's sister, Lina Ibrahim; Mother; and Mother's friend, Tasha Ayala. On February 22, 2024, the trial court issued an order and opinion granting Grandmother partial relief. Specifically, the court established a schedule allowing Grandmother partial physical custody of her elder grandson, Mu.I., every Wednesday from 4:00 p.m. to 7:00 p.m. and every other Saturday from 12:00 p.m. to 8:00 p.m. Trial Court Order and Opinion, 2/22/24, at 17. However, based upon the fact that Grandmother smoked cigarettes in her home, Grandmother was prohibited from bringing Mu.I. to her home during these custody periods.[1] *Id.* at 16-17. In light of Ma.I.'s young age, Grandmother was permitted visitation with him at Mother's discretion, which she was

_____

[1] In an order entered subsequent to the filing of the notice of appeal, the trial court clarified that Grandmother was not permitted to allow Mu.I. in any residence or vehicle where cigarette smoking had occurred during her custody periods. Order, 4/3/24.

directed to exercise "in good faith to promote [Ma.I.'s] exposure to and ability to bond with [Grandmother] and her family." *Id.*

Mother then filed this timely appeal through counsel,[2] as well as a contemporaneous concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(a)(2)(i). On April 19, 2024, the trial court issued an opinion in which it largely relied on its prior analysis and addressed several additional issues Mother raised in her concise statement.

Mother raises three issues on appeal. First, she argues that the provisions of the Child Custody Act authorizing the award of partial physical custody to Grandmother violate Mother's federal constitutional right to direct Children's upbringing. Second, Mother asserts that the trial court did not apply the presumption that she was acting in Children's best interests, as required by Pennsylvania caselaw interpreting federal constitutional requirements. Finally, Mother contends that the trial court misapplied the custody factor requiring that it consider whether granting custody to Grandmother would pose any potential risk of harm to Children.

Our standard of review in custody matters is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand.

_____

[2] Mother represented herself at the hearing.

However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***Wilson v. Smyers***, 284 A.3d 509, 515 (Pa. Super. 2022) (citation omitted).

Mother first argues that the Child Custody Act is unconstitutional under federal due process principles and ***Troxel v. Granville***, 530 U.S. 57 (2000), as it pertains to an award of custody to a grandparent against a parent's wishes. Mother avers that the "Pennsylvania statute unconstitutionally provides a presumption of harm rather" than "requir[ing] some showing of harm or threat of harm to the child before a court can override a fit parent's decision." Mother's Brief at 12-13.

This facial constitutional challenge to the Child Custody Law was not made in the lower court but instead was raised for the first time in Mother's Rule 1925(b) statement. Therefore, it is waived. ***See*** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); ***Beemac Trucking, LLC v. CNG Concepts, LLC***, 134 A.3d 1055, 1058 (Pa. Super. 2016); ***see also In the Interest of T.W.***, 261 A.3d 409, 425 n.9 (Pa. 2021) (doctrine of waiver applies even to issues of constitutional dimensions). Moreover, this argument is waived for the additional reason that Mother did not file proof of service in this Court demonstrating that she notified the Pennsylvania Attorney General of her challenge to the constitutionality of the Child Custody Act, a requirement

under our appellate rules. *See* Pa.R.A.P. 521(a); *Brown v. Halpern*, 202 A.3d 687, 696 & n.5 (Pa. Super. 2019).[3]

Mother next argues that the trial court erred in applying Pennsylvania cases interpreting *Troxel*, which require that trial courts apply a presumption in favor of a fit parent in parent-grandparent custody disputes. *See D.P. v. G.J.P.*, 146 A.3d 204, 212 (Pa. 2016); *Hiller v. Fausey*, 904 A.2d 875, 887 (Pa. 2006). Mother avers that Grandmother did not present sufficient evidence to overcome the presumption where she "simply testified that she was a good grandmother and loved her grandchildren," no expert testimony was offered of a bond between Grandmother and Children, and the evidence showed that there was no relationship at all between Grandmother and the younger grandchild, Ma.I. Mother's Brief at 21.[4]

---

[3] In any event, Pennsylvania courts have rejected federal due process challenges to the Child Custody Act provision under which Grandmother brought her custody claim. *See* 23 Pa.C.S. § 5325(1) ("where the parent of the child is deceased, a parent . . . of the deceased parent" may file an action for partial or supervised physical custody); *J. & S.O. v. C.H.*, 206 A.3d 1171, 1176-78 (Pa. Super. 2019) (finding that Section 5325(1) does not infringe the surviving parent's due process rights to supervise the child's upbringing); *see also Hiller v. Fausey*, 904 A.2d 875, 887-90 (Pa. 2006) (holding similar prior grandparent standing statute constitutional).

[4] Mother also advances an argument that the trial court did not apply the pro-parent presumption of Section 5327(b) of the Child Custody Act, 23 Pa.C.S. § 5327(b), which may only be rebutted through clear and convincing evidence. *See* Mother's Brief at 20. However, this statutory provision involves cases where a non-parent seeks **primary** physical custody of a child, not the partial physical custody award at issue here. Notwithstanding the general presumption in favor of a fit parent, the Child Custody Act does not require that a grandparent seeking partial physical custody satisfy a clear and convincing burden of proof.

Our Supreme Court has recognized that, in a custody dispute between a "fit parent"[5] and a non-parent, courts must apply a presumption that the parent acts in her child's best interests in order to protect the parent's fundamental right to direct the upbringing of her child.[6] ***D.P.***, 146 A.3d at 212, 214; ***Hiller***, 904 A.2d at 887-88. The Court has emphasized that when a third party brings a partial physical custody action against the wishes of parents:

> [T]he parties do not start out even; the parents have a prima facie right to custody, which will be forfeited only if convincing reasons appear that the child's best interest will be served by an award to the third party. Thus, even before the proceedings start, the evidentiary scale is tipped, and tipped hard, to the parents' side. What the judge must do, therefore, is first, hear all evidence relevant to the child's best interest, and then, decide whether the evidence on behalf of the third party is weighty enough to bring the scale up to even, and down on the third party's side.

---

[5] There is no dispute that Mother is a fit parent. ***See D.P.***, 146 A.3d at 214 ("[A]bsent factors such as abuse, neglect, or abandonment, the law presumes parents are fit[.]"); ***see also*** Trial Court Order and Opinion, 2/22/24, at 13.

[6] The presumption in favor of the parent is in addition to the parent's other due process protection: "stringent" statutory standing requirements to ensure that only third parties with a strong interest in having a continuing relationship with the child are allowed to bring a custody action. ***D.P.***, 146 A.3d at 212, 214; ***Hiller***, 904 A.2d at 889. Thus, in ***Hiller***, the Court stressed the public policy in favor of allowing a grandparent to foster "strong inter-generational ties" with his or her grandchild which a court may find should overcome a "decision of a fit parent to exclude a grandparent from a grandchild's life, especially where the grandparent's child is deceased and the grandparent relationship is longstanding and significant to the grandchild." ***Hiller***, 904 A.2d at 886-87; ***see also Wilson***, 284 A.3d at 516.

*Hiller*, 904 A.2d at 887 (citation and quotation marks omitted); *see also* *D.P.*, 146 A.3d at 212.

Here, the trial court recognized that the due process clause required that it afford special weight to Mother's preference to not allow Grandmother periods of physical custody with Children. *See* Trial Court Order and Opinion, 2/22/24, at 13-14; Trial Court Opinion, 4/19/24, at 5. Moreover, the court's decision to grant limited periods of physical custody with Mu.I. and visitation with Ma.I. at Mother's discretion was consistent with an "evidentiary scale . . . tipped hard" in Mother's favor. *Hiller*, 904 A.2d at 887 (citation omitted). Contrary to Mother's claim on appeal, Grandmother did much more than "simply testif[y] that she was a good grandmother and loved" Grandchildren. Mother's Brief at 21. Grandmother established at the hearing that Mu.I. began staying at her house several nights per week from December 2023 until the Ma.I.'s birth in July 2023, with Grandmother providing "99 percent" of the childcare during those periods, including feeding, changing, bathing, and playing with Mu.I. N.T., 2/12/24, at 10-12, 21-22, 37-39, 41, 43-44. The evidence additionally showed Grandmother, along with her adult daughter who lived in the home, fostered a relationship between Mu.I. and his fifteen-year-old half-sister as well as extended family members; Grandmother and her daughter also sought to establish Mu.I.'s connection to his Palestinian heritage, including by teaching him Arabic. *Id.* at 11, 14-15, 22, 38-40. The trial court was well within its discretion to find that the evidence of supporting a continuance of Grandmother's relationship with Mu.I. substantially

outweighed any potential concerns that Mother raised at the hearing regarding Grandmother's exercise of custody, discussed in detail below. *See* Trial Court Order and Opinion, 2/22/24, at 5-6, 8-10, 16-17.

While Mother faults Grandmother for not presenting an expert to offer an analysis of the bond between Grandmother and Mu.I., our caselaw does not require that a grandparent retain an expert to conduct a formal bonding evaluation in order to obtain partial physical custody of her grandchild. Although the Child Custody Law mandated that the trial court consider the amount of Grandmother's personal contact with Children in ascertaining whether to award partial physical custody, 23 Pa.C.S. § 5328(c)(1)(i), there is no "yardstick by which a court [must] measure[] the amount of grandparent-child contact before determining whether a partial custody award is deserved." *Wilson*, 284 A.3d at 517. The trial court's finding that Grandmother had developed a substantial, positive relationship with Mu.I. in the months prior to Father's death and that it was in his best interest to continue that relationship through periods of physical custody with Grandmother is amply supported by the record. *See* Trial Court Order and Opinion, 2/22/24, at 12-13; *Wilson*, 284 A.3d at 517-19 (trial court did not abuse its discretion in awarding partial physical custody to grandmother who developed relationship with her toddler grandchild over approximately 40 supervised and several additional unsupervised visits following death of grandmother's son, the child's father).

As Mother points out, and as the trial court recognized, Grandmother had a more limited relationship with her younger grandson, Ma.I., who was born in July 2023, two months before Father's death. *See* Trial Court Order and Opinion, 2/22/24, at 13. However, in light of other factors weighing in favor of permitting Grandmother some form of contact with Ma.I., including her established relationship with Ma.I.'s older brother and Grandmother's efforts to foster a connection to Children's paternal culture, we do not find that the award to Grandmother of visitation with Ma.I.—on no fixed schedule and at Mother's discretion—constituted an abuse of discretion or unreasonably infringed on Mother's relationship with Ma.I. *See Wilson*, 284 A.3d at 518-19 (trial court award to grandmother of seven hours of partial physical custody with her grandson was not an abuse of discretion where it was "proportion[al]" to the limited relationship she had been able to establish with her grandson to that date). More importantly, Mother has no ground to challenge the discretionary visitation award on appeal, as it is consistent with the relief Mother requested from the trial court in her pre-trial statement and at the hearing. *See* Mother's Pre-Trial Statement, 2/7/24, at 7 (proposed order providing that Grandmother and other paternal family members would be granted only "visitation" with Children at Mother's discretion and under her supervision); N.T., 2/12/24, at 70 (in closing arguments, Mother urging trial court to enter the proposed order included in her pre-trial statement); Trial Court Opinion, 4/19/24, at 8 ("With [Ma.I.], [the court] gave [M]other exactly

what she had asked for the [G]randmother to have, visitation at [M]other's sole discretion . . .").

Having found that the trial court applied the required evidentiary presumption in favor of Mother, we turn to Mother's final issue in which she challenges the trial court's analysis of the custody factors. As the trial court entered an order affecting custody, it was required to address the Section 5328(a) custody factors in its decision, with weighted consideration of any factor that affects the safety of the child. 23 Pa.C.S. § 5328(a)(1)-(16); *Wilson*, 284 A.3d at 516. Moreover, because the award of partial physical custody at issue was to a grandparent, the trial court had to consider additional custody factors set forth in Section 5328(c). 23 Pa.C.S. § 5328(c); *Wilson*, 284 A.3d at 516-17.[7]

Here, Mother only challenges the application of custody factor Section 5328(a)(2), which required the court to give weighted consideration to "[t]he present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and

---

[7] In this case, based upon the standing grounds upon which Grandmother based her complaint, 23 Pa.C.S. § 5325(1), the trial court was required to consider "(i) the amount of personal contact between the child and the party prior to the filing of the action; (ii) whether the award interferes with any parent-child relationship; and (iii) whether the award is in the best interest of the child." 23 Pa.C.S. § 5328(c)(1)(i)-(iii).

supervision of the child."[8]  23 Pa.C.S. § 5328(a)(2).  Mother argues that this factor "should have applied with special force in light of" the concerns she expressed at the hearing regarding Children's safety in Grandmother's care, relating to an alleged "prior dog[-]biting incident," smoking of cigarettes inside Grandmother's home, and Mu.I.'s safety around electrical outlets in the home. Mother's Brief at 25-26.

Upon review, we conclude that the trial court properly weighed any potential risk of harm to Mu.I. in crafting its partial physical custody award to Grandmother.[9]  In its opinion, the trial court considered Mother's dog-biting allegation but noted that the details of this incident were hazy as it was unclear who owned the dog and where incident occurred.  Trial Court Order and Opinion, 2/22/24, at 5-6.  We agree with the trial court that the evidence on this issue is unclear: while Mother testified to an incident where Mu.I. had a bite or scratch mark on his face after playing with the dog while under Grandmother's care, there was also evidence that Mother offered

_____

[8] Mother also argues that the trial court either failed to consider, "failed to give proper weight to," or "did not sensibly apply" factors (a)(1), (3), (4), (5), (6), (7), (9), and (10).  **See** Mother's Brief at 26-27.  These arguments are waived for two reasons: (1) they are wholly undeveloped aside from the bald claim of trial court error, and (2) the only error raised in Mother's Rule 1925(b) statement concerning the custody factors related to (a)(2).  **See** Rule 1925(b) Statement, 3/20/24, ¶F; Pa.R.A.P. 1925(b)(4)(vii); **Wirth v. Commonwealth**, 95 A.3d 822, 837 (Pa. 2014); **In re M.Z.T.M.W.**, 163 A.3d 462, 466 (Pa. Super. 2017).

[9] As the trial court only allowed Grandmother the right to visit Ma.I. at Mother's discretion and Mother can ensure Ma.I.'s safety during those visits, we do not address the application of Section 5328(a)(2) to the younger child.

- 11 -

Grandmother visitation with Children in exchange for return of the dog to her, and Mother represented to the court that the dog did not present a safety concern. N.T., 2/12/24, at 18, 42, 53-54; Mother's Pre-Trial Statement, 2/7/24, at 1-2; *see also* Trial Court Order and Opinion, 2/22/24, at 6. In any event, as the court explained, its order only allowing Grandmother's visits with Mu.I. outside the home minimized any safety concern regarding potential lapses in physical supervision that led to the dog-bite incident. Trial Court Order and Opinion, 2/22/24, at 6, 17.

With respect Grandmother's cigarette smoking in the home with Mu.I. present, the court agreed with Mother and recognized the potential risk to Mu.I.'s health; the court accordingly framed its custody order to prevent Grandmother from bringing Mu.I. into her home for custody visits. Trial Court Order and Opinion, 2/22/24, at 6, 8-10, 16-17; *see also* Order, 4/3/24 (preventing Grandmother from bringing Mu.I. into **any** residence or vehicle where smoking had occurred). Grandmother's testimony that Mu.I. had never been diagnosed with asthma or exhibited respiratory difficulties around her and that she did not smoke in Mu.I.'s presence and used air filters in the home did not allay the court's concern regarding second-hand smoke in light of Mother's own asthma diagnosis. *Id.* At 8-9; *see* N.T., 2/12/24, at 21, 26-27, 29-32. By ensuring that Mu.I. would not be present in a space where Grandmother had been smoking, the court adequately addressed the potential harm to her grandson.

Finally, the trial court did not address the risk to Mu.I.'s health related to uncovered electrical outlets in its opinion, apparently because the evidence at the hearing did not show a continuing risk of harm. Grandmother presented evidence that she had placed covers on her receptacles and had taken other safety precautions around the home. N.T., 2/12/24, at 13-14, 40-41. While Mother stated that Grandmother only undertook this precaution at her request, Mother acknowledged that Grandmother had "fixed that problem." *Id.* at 53, 65. Regardless, as with the safety concerns related to second-hand cigarette smoke and the dog, the trial court's restriction of custody to outside Grandmother's home addressed this concern.

We therefore conclude that the trial court did not abuse its discretion with respect to its thorough analysis of the Section 5328(a)(2) custody factor and by carefully crafting its custody award to account for any potential risk of harm that Mu.I. could experience while under Grandmother's care. As we find no merit to any of Mother's issues, we affirm the February 22, 2024 order awarding partial physical custody and visitation to Grandmother.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/9/2024

- 13 -